THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL LOGAN, Defendant-Appellant.

Second District    No. 3—97—0885

Opinion filed December 31, 1998.

Liam Dixon, of Camic, Johnson, Wilson & Bloom, P.C., of Elgin, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The defendant, Carl Logan, appeals from the April 17, 1997, order of the circuit court of Du Page County denying his motion to dismiss his indictment which charged him with the offense of unlawful failure to register as a sex offender (730 ILCS 150/3 (West 1996)). Following a bench trial, he was convicted of the charged offense and was sentenced to 60 days' imprisonment and 30 months' probation. He now appeals, arguing that the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West Supp. 1997)) and the Sex Offender and Child Murderer Community Notification Law (730 ILCS 152/101 *et seq.* (West Supp. 1997)) are unconstitutional in that they (1) violate the *ex post facto* clauses of the United States and Illinois Constitutions (U.S. Const., art. I, § 10, cl. 1; Ill. Const. 1970, art. I, § 16); (2) constitute bills of attainder; (3) violate his right to due process; (4) violate the terms of his plea agreement; (5) are fundamentally unfair; and (6) violate his right to privacy.

## I. FACTS

On October 2, 1996, the defendant was charged by indictment with the offense of unlawful failure to register as a sex offender (730 ILCS 150/3 (West 1996)). The indictment alleged that the defendant failed to register as a sex offender within 30 days of moving to Westmont. On December 2, 1996, the defendant filed a motion to dismiss his indictment, raising essentially the same issues noted above. According to the defendant's motion, he was convicted of a sex offense in 1990 and was subsequently sentenced to the Department of Corrections. He was released from prison in 1992. The defendant argued that, although the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 1996)) was enacted after his conviction, he was nonetheless required to register under its provisions.

Following a hearing, the trial court denied the defendant's motion to dismiss the indictment. In so ruling, the trial court relied upon *People v. Adams*, 144 Ill. 2d 381 (1991), wherein the Illinois Supreme Court upheld the Habitual Child Sex Offender Registration Act (Ill. Rev. Stat. 1987, ch. 38, pars. 221 through 230) against eighth amendment and due process challenges. The trial court also noted that, in *People v. Starnes*, 273 Ill. App. 3d 911 (1995), the Illinois Appellate Court, First District, upheld the retroactive application of the Child Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 1994)) after determining that the Act did not impose an unconstitutional restraint on liberty or property.

On August 26, 1997, the defendant was convicted of the offense of unlawful failure to register as a sex offender. Following the denial of his posttrial motion, the defendant filed a timely notice of appeal.

## II. REVIEW OF THE REGISTRATION ACT AND NOTIFICATION LAW

### A. The 1986 Registration Act

The legislature enacted this state's first sex offender registration law in 1986 and has since amended the law several times. The first registration law enacted in 1986 was entitled the Habitual Child Sex Offender Registration Act (Habitual Registration Act) (Ill. Rev. Stat. 1987, ch. 38, pars. 221 through 230). The Habitual Registration Act required the registration of any person who, after July 1, 1986, was convicted of at least two sex crimes against a victim under the age of 18. Ill. Rev. Stat. 1987, ch. 38, pars. 221(A), (B)(1), 223.

Our supreme court considered the constitutionality of the Habitual Registration Act in *People v. Adams*, 144 Ill. 2d 381 (1991). In *Adams*, the defendant argued that the registration requirements denied him his right to due process and constituted cruel and unusual punishment in violation of the eighth amendment. *Adams*, 144 Ill. 2d at 385-86. The court rejected the defendant's due process argument, holding that the registration requirements provided a reasonable method of accomplishing the legislature's desired objective of protecting children. *Adams*, 144 Ill. 2d at 390.

In addition, the supreme court also rejected the defendant's eighth amendment argument, holding that the registration requirement did not constitute cruel and unusual punishment. *Adams*, 144 Ill. 2d at 389. In so ruling, the supreme court noted that the legislative history of the Act indicated that its purpose was to protect children and was therefore nonpenal. *Adams*, 144 Ill. 2d at 387. Moreover, the court explained that the registration requirement was not severe in comparison to the potential alternative of spending an extended period of time in prison. *Adams*, 144 Ill. 2d at 387-88. The court therefore concluded that the Habitual Registration Act did not constitute cruel and unusual punishment under the eighth amendment. *Adams*, 144 Ill. 2d at 389.

### B. The 1993 Registration Act

Effective January 1, 1993, the Habitual Registration Act was amended, and its title became the Child Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 1994)). This act required the registration of (1) all child sex offenders who, after July 1986, had been convicted of at least two sex crimes; or (2) any person, who after Janu-

ary 1, 1993, had been convicted of a first sex offense against a victim under the age of 18. 730 ILCS 150/2, 3 (West 1994).

In *People v. Starnes*, 273 Ill. App. 3d 911 (1995), the defendant argued that the registration requirements of the Child Sex Offender Registration Act constituted punishment in violation of state and federal *ex post facto* clauses. *Starnes*, 273 Ill. App. 3d at 913. In 1994, the defendant in *Starnes* was convicted of a sex offense that took place from 1990 to 1991. *Starnes*, 273 Ill. App. 3d at 912. The defendant argued that, at the time of the offense, the Habitual Registration Act required registration only after conviction of a second offense. However, because he was convicted of the sex offense after the effective date of the Child Sex Offender Registration Act, he was required to register after conviction of a first offense. *Starnes*, 273 Ill. App. 3d at 913.

On appeal, the Appellate Court, First District, determined that the defendant had waived his *ex post facto* argument as he failed to raise the issue in the trial court. *Starnes*, 273 Ill. App. 3d at 914. Notwithstanding this determination, the court stated that, even if the issue had not been waived, the defendant would not prevail as the registration provisions did not constitute punishment in violation of the *ex post facto* clause. *Starnes*, 273 Ill. App. 3d at 915. The court in Starnes noted that the Child Sex Offender Registration Act only required a convicted child sex offender to fill out a form informing police of his address and determined that such a requirement did not constitute punishment. *Starnes*, 273 Ill. App. 3d at 915.

In addition, the court noted that a defendant did not have an absolute right to be tried or sentenced under the law as it existed at the time of the offense. *Starnes*, 273 Ill. App. 3d at 915. The court explained that statutes imposing some collateral consequence upon a conviction may be applied retroactively if their purpose is not to punish the offender but to protect some other legitimate public interest. *Starnes*, 273 Ill. App. 3d at 915. Since the statute at issue was designed to aid law enforcement agencies, the court concluded that its provisions could be applied retroactively. *Starnes*, 273 Ill. App. 3d at 915.

C. The 1996 and 1997 Registration Act and Notification Law

The legislature further modified the registration requirements under the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 1996)), which became effective January 1, 1996. Unlike its predecessors, this act applied retroactively to all sex offenders, as defined by the statute. 730 ILCS 150/2 (West 1996). In addition, the legislature enacted the Child Sex Offender and Murderer Community Notification Law (730 ILCS 152/101 *et seq.* (West 1996)), which became effective June 1, 1996.

Effective July 24, 1997, the legislature made further amendments to the Sex Offender Registration Act (Registration Act) (730 ILCS 150/1 *et seq.* (West Supp. 1997)). In addition, the Child Sex Offender and Murderer Community Notification Law was repealed, and the Sex Offender and Child Murderer Community Notification Law (Notification Law) (730 ILCS 152/101 *et seq.* (West Supp. 1997)) became effective. The defendant herein fails to cite to the amended version of the Registration Act and instead only cites the repealed version of the Notification Law. However, as the recently amended version of the Registration Act and the newly enacted Notification Law have retroactive application to all sex offenders as defined by the Registration Act, we will focus our discussion on the constitutionality of these statutes as amended.

## 1. Persons Covered by the Registration Act

■ The Registration Act requires all sex offenders, as defined by the Act, to register within 10 days of establishing a residence or domicile in any county for more than 10 days. 730 ILCS 150/3(b) (West Supp. 1997). The category of sex offenders includes any person who is convicted of a sex offense or who is certified as a sexually dangerous person pursuant to the Sexually Dangerous Persons Act (725 ILCS 205/0.01 *et seq.* (West 1996)). 730 ILCS 150/2(A)(1)(a), (A)(2) (West Supp. 1997). "Sex offenses" include, for example, criminal sexual assault, child pornography, indecent solicitation of a child, and criminal sexual abuse. 730 ILCS 150/2(B)(1) (West Supp. 1997).

## 2. Registration

Under the Registration Act, any sex offender convicted or adjudicated prior to January 1, 1996, whose liability for registration had not yet expired was required to register prior to January 31, 1996. 730 ILCS 150/3(c)(2) (West Supp. 1997). All sex offenders convicted on or after January 1, 1996, are required to register in person within 10 days after the entry of the sentencing order. 730 ILCS 150/3(c)(3) (West Supp. 1997). Any convicted sex offender who is unable to comply with the registration requirements because he is confined, institutionalized, or imprisoned on or after January 1, 1996, is required to register within 10 days of discharge, parole, or release. 730 ILCS 150/3(c)(4) (West Supp. 1997).

The registrant must provide identification and documentation that substantiates proof of residence at the registering address and must pay a $10 initial registration fee and a $5 annual renewal fee. 730 ILCS 150/3(c)(5), (c)(6) (West Supp. 1997). In addition, the registrant must provide a written and signed statement, and registration may also include the registrant's fingerprints and photograph. 730 ILCS 150/8 (West Supp. 1997).

Section 6 of the Registration Act provides that any person who has been (1) adjudicated to be sexually dangerous and is later released or (2) found to be no longer sexually dangerous and discharged must report in person to the law enforcement agency with which he last registered no later than 90 days after the date of his last registration and every 90 days thereafter for the period of his or her natural life. 730 ILCS 150/6, 7 (West Supp. 1997). All other registrants must report to the appropriate law enforcement agency on a yearly basis for a period of 10 years after conviction or adjudication. 730 ILCS 150/6, 7 (West Supp. 1997). In addition, all registrants must provide the law enforcement agency with which they last registered with written notice of any change of address. 730 ILCS 150/6 (West 1996). Under section 10 of the Registration Act, the failure to comply with the Registration Act is a Class 4 felony. 730 ILCS 150/10 (West Supp. 1997).

### 3. Community Notification

■ Under section 120 of the Notification Law, the sheriff of the county in which the registrant resides is required to disclose to certain institutions the registrant's name, address, date of birth, and offense or adjudication. 730 ILCS 152/120 (West Supp. 1997). These institutions include schools, child care facilities, and the Department of Children and Family Services. 730 ILCS 152/120 (a)(2), (a)(3), (a—4) (West Supp. 1997).

Furthermore, the Department of State Police and any law enforcement agency having jurisdiction may, at its discretion, disclose to any person likely to encounter a registered sex offender the following information: (1) the registrant's name, address, and date of birth; (2) the offense of which he was convicted; and (3) his adjudication as a sexually dangerous person. 730 ILCS 152/120(b) (West Supp. 1997). In addition, the registrant's name, address, date of birth, and offense or adjudication is open to inspection by the public according to procedures set by the municipal police department or sheriff. 730 ILCS 152/120(c) (West Supp. 1997). Moreover, the Notification Law provides that the Department of State Police shall establish and maintain a sex offender database. 730 ILCS 152/115 (West Supp. 1997).

### III. *EX POST FACTO* ANALYSIS

The defendant first contends that the retroactive application of the Registration Act and the Notification Law violates the *ex post facto* clauses of the United States Constitution (U.S. Const., art. I, § 10, cl. 1) and the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 16). He notes that, at the time of the original offense, he was not required to register as a sex offender. The defendant therefore contends that the registration requirements and the community notification provisions constitute additional punishment.

■ In support of his contention, the defendant relies upon *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554 (1963). In that case, the United States Supreme Court delineated the following seven factors to consider in determining whether a statute is punitive: (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has historically been regarded as a punishment; (3) whether the sanction comes into play only on a finding of *scienter*; (4) whether the sanction will promote the traditional aims of punishment (retribution and deterrence); (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which the sanction may rationally be connected is assignable for it; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Mendoza-Martinez*, 372 U.S. at 168-69, 9 L. Ed. 2d at 661, 83 S. Ct. at 567-68.

In addition, the defendant notes that the penalty for violating the Registration Act was amended, effective June 1, 1996. 730 ILCS 150/10 (West 1996). The amendment changed the penalty for violation of the Registration Act from a Class A misdemeanor to a Class 4 felony. 730 ILCS 150/10 (West 1996). He contends that this enhanced penalty also violates the *ex post facto* clause.

## A. Intent-Effects Test

■ A statute violates the *ex post facto* clauses of the United States and Illinois Constitutions if it criminalizes conduct that was previously legal or if it increases the punishment for an existing crime. *Starnes*, 273 Ill. App. 3d at 914. The purpose of the *ex post facto* clause is to ensure that legislative enactments give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. *People v. Granados*, 172 Ill. 2d 358, 367 (1996).

The United States Supreme Court recently considered whether Kansas's Sexually Violent Predator Act constituted punishment in violation of the *ex post facto* clause. See *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997). The statute at issue in *Hendricks* established the procedures for the involuntary civil commitment of persons who, due to a "mental abnormality" or "personality disorder," are likely to engage in "predatory acts of sexual violence." *Hendricks*, 521 U.S. at 350, 138 L. Ed. 2d at 508, 117 S. Ct. at 2076. The defendant in *Hendricks* argued that the Kansas law violated the *ex post facto* clause because it established criminal proceedings that amounted to additional punishment. *Hendricks*, 521 U.S. at 360-61, 138 L. Ed. 2d at 514, 117 S. Ct. at 2081.

In analyzing this particular issue, the Supreme Court first considered the legislative intent behind the Kansas law. The court

noted that the act was codified within the Kansas probate code and that the act itself stated that it created a "civil commitment procedure." *Hendricks*, 521 U.S. at 361, 138 L. Ed. 2d at 514-15, 117 S. Ct. at 2082. The court therefore determined that the Kansas legislature intended to create a civil commitment scheme. *Hendricks*, 521 U.S. at 361, 138 L. Ed. 2d at 515, 117 S. Ct. at 2082.

The Supreme Court next considered whether the law had a punitive effect despite its nonpunitive intent by examining several of the factors enunciated in *Mendoza-Martinez*. *Hendricks*, 521 U.S. at 362-63, 138 L. Ed. 2d at 515-16, 117 S. Ct. at 2082-83. The court noted that the Kansas act did not implicate the primary objectives of criminal punishment, namely, retribution and deterrence. *Hendricks*, 521 U.S. at 361, 138 L. Ed. 2d at 515, 117 S. Ct. at 2083. Nor did the application of the act turn on a finding of *scienter*. *Hendricks*, 521 U.S. at 361, 138 L. Ed. 2d at 515, 117 S. Ct. at 2083. The court also noted that, although the civil commitment scheme at issue involved an affirmative restraint, such a restraint did not constitute punishment. *Hendricks*, 521 U.S. at 363, 138 L. Ed. 2d at 516, 117 S. Ct. at 2083. The court therefore concluded that, although the Kansas act provided for confinement of sexual predators in state institutions, it did not impose punishment in violation of the *ex post facto* clause of the Constitution. *Hendricks*, 521 U.S. at 369, 138 L. Ed. 2d at 519, 117 S. Ct. at 2085.

Although the United States Supreme Court has not yet addressed the constitutionality of a sex offender registration and notification law, we note that courts in other jurisdictions have concluded that such laws do not amount to punishment in violation of the *ex post facto* clause using the intent-effects test utilized in *Hendricks*. See *State v. Cook*, 83 Ohio St. 3d 404, 415, 700 N.E.2d 570, 579-80 (1998); *Russell v. Gregoire*, 124 F.3d 1079, 1087 (9th Cir. 1997); *Doe v. Pataki*, 120 F.3d 1263, 1276 (2d Cir. 1997). In order to determine whether the Illinois Registration Act and Notification Law violate the federal and state *ex post facto* clauses, we will apply the intent-effects test used by the Supreme Court in *Hendricks*. First, we will consider the legislative intent behind the statutes at issue. If the legislative intent appears to be nonpunitive, we must then determine whether these statutes have a punitive effect despite their nonpunitive intent. *Hendricks*, 521 U.S. at 361, 138 L. Ed. 2d at 515, 17 S. Ct. at 2082.

### 1. Legislative Intent

■ As noted above, in interpreting an earlier version of the Registration Act, our supreme court determined that its purpose was to create an additional method of protection from the increasing incidence of sexual assault and sexual abuse. See *Adams*, 144 Ill. 2d at

387. Indeed, during the legislative debates concerning the amendment of the Registration Act, Senator Bomke stated, "[I]t's important to offer this legislation to protect our children." 89th Ill. Gen. Assem., Senate Proceedings, May 8, 1996, at 89 (statement of Senator Bomke). He further stated, "We feel that this is not punishment. It's just merely *** requiring [the sex offenders] to register ***." 89th Ill. Gen. Assem., Senate Proceedings, May 8, 1996, at 92 (statement of Senator Bomke). Furthermore, commenting on the Registration Act and Notification Law, Representative Klingler stated, "This Bill, again, is really focused at the delivery of information by the state police and how that information is organized." 90th Ill. Gen. Assem., House Proceedings, April 8, 1997, at 238 (statement of Representative Klingler). In light of the principles articulated in *Adams*, as well as the legislative history of both laws, we conclude that the legislature did not intend to impose punishment with the enactment of these statutes.

## 2. Punitive Effect

We must next determine whether the statutes at issue have a punitive effect despite their nonpunitive intent. The defendant argues that these statutes are punitive in effect based upon the factors discussed in *Mendoza-Martinez*, 372 U.S. at 168-69, 9 L. Ed. 2d at 661, 83 S. Ct. at 567-68. As the United States Supreme Court considered several of these factors in *Hendricks* (521 U.S. at 362-63, 138 L. Ed. 2d at 515-16, 117 S. Ct. at 2082-83), we will use these factors to guide our analysis and will consider each in turn.

### a. Affirmative Disability or Restraint

Contrary to the defendant's contentions, we do not believe that the physical act of registering constitutes an affirmative restraint. The registration requirements do not disable a sex offender's choice of residence. Moreover, this court has noted that the registration requirement places no more constraint on the liberty of someone required to register with the local police authority than do many of the well-established civil disabilities associated with felony convictions in Illinois, such as limitations on the possession of firearms, the right to vote, or the right to hold public office. See *People v. Adams*, 198 Ill. App. 3d 74, 80 (1990). We therefore conclude that the registration process is a *de minimis* administrative requirement. See generally *Cook*, 83 Ohio St. 3d at 418, 700 N.E.2d at 583.

The defendant further contends that the notification provision constitutes a restraint as it subjects him to the risk of physical violence, stigma, and impairment of employment opportunities. We disagree. Although notification conveys information about the offender to the public, any stigma that may occur is a result of the offender's

status as a felon and not as a direct result of the notification. See generally *Lanni v. Engler*, 994 F. Supp. 849, 853 (E.D. Mich. 1998) (holding that Michigan's registration and notification law, which creates a sex offender registry organized by zip code, does not impose punishment in violation of the *ex post facto* clause). Furthermore, our inquiry into the law's effects cannot consider the possible vigilante responses of citizens to notification. Courts must presume that law enforcement will protect offenders from vigilantism. See *Russell*, 124 F.3d at 1091.

### b. Historically Regarded as Punishment

The defendant cites *Doe v. Pataki*, 940 F. Supp. 603 (S.D.N.Y. 1996), in support of his contention that the sex offender registration and notification requirements traditionally have been viewed as punishment. However, we note that *Doe* was recently reversed. See *Doe v. Pataki*, 120 F.3d 1263, 1281 (2d Cir. 1997) (rejecting the defendant's historical analogy and holding that registration and notification provisions of New York's Sex Offender Registration Act did not impose punishment under *ex post facto* clause). Moreover, we note that public notification in and of itself has never been regarded as punishment when done in furtherance of a legitimate governmental interest. See *Lanni*, 994 F. Supp. at 853. As noted above, the registration and notification provisions at issue are intended to protect the public, not punish offenders. See *Adams*, 144 Ill. 2d at 387. We therefore reject the defendant's contention that registration and notification laws have been historically regarded as punishment.

### c. *Scienter*

According to the defendant, when a statute requires proof of *scienter*, a sanction is likely to be deemed criminal. However, the application of the registration and notification provisions at issue do not require the element of *scienter*. The offender need only be released into the community to trigger the provisions of these statutes. We therefore conclude that this factor is not indicative of a punitive effect.

### d. Retribution and Deterrence

The defendant contends that the dissemination of his identity and address will result in public ostracism and therefore has a deterrent effect. However, even assuming that registration and notification have some deterrent effect, such an effect does not compel the conclusion that these statutes are punitive. Indeed, the Supreme Court has recognized that deterrence may serve civil as well as criminal goals. See *United States v. Ursery*, 518 U.S. 267, 292, 135 L. Ed. 2d 549, 570, 116 S. Ct. 2135, 2149 (1996).

### e. Behavior Already Criminal

The defendant fails to specifically discuss this factor. However, we

note that the requirements of the Registration Act and Notification Law are triggered by the existence of a prior conviction of a sex offense. 730 ILCS 150/2(A)(1)(a) (West Supp. 1997). Although these statutes are triggered by behavior that is already a crime (see generally *Pataki*, 120 F.3d at 1281), we note that this is one of many factors our court considers in the *ex post facto* analysis.

### f. Alternate Remedial Purpose

This element relates to the existence of a nonpunitive or alternative purpose rationally related to the statute. See generally *Flemming v. Nestor*, 363 U.S. 603, 615, 4 L. Ed. 2d 1435, 1447, 80 S. Ct. 1367, 1375 (1960). Registration allows local law enforcement to collect and maintain a bank of information on offenders and to monitor offenders. Notification provisions allow the dissemination of relevant information to the public. As discussed above, the legislative history of these statutes indicates that they were enacted for the purpose of protecting the public. Accordingly, we find that the laws at issue have an alternate remedial purpose.

### g. Excessiveness in Relation to Alternative Purpose

Under the statutes at issue, offenders must supply their names, addresses, a written statement, and, in some instances, their fingerprints and photograph. See 730 ILCS 150/3(c)(5) (West Supp. 1997). As noted above, notification is restricted to certain institutions, and the registration information is available for public inspection according to procedures set forth by law enforcement officials. 730 ILCS 152/120 (West Supp. 1997). We believe that such provisions are not excessive in relation to their purpose. Instead, we conclude that these statutes are carefully tailored to meet the legislature's purpose of protecting the community.

### B. Conclusion

After examining the legislative intent and balancing all of the aforementioned factors, we conclude that the purpose of the registration and notification provisions is to protect the public and not to punish sex offenders and that their effect is not punitive. Moreover, we note that most courts from other jurisdictions have held that sex offender registration and notification laws do not constitute punishment in violation of the *ex post facto* clause. See *State v. Cook*, 83 Ohio St. 3d 404, 415, 700 N.E.2d 570, 579-80 (1998); *Lanni v. Engler*, 994 F. Supp. 849, 854 (E.D. Mich. 1998); *Russell v. Gregoire*, 124 F.3d 1079, 1093 (9th Cir. 1997); *Doe v. Pataki*, 120 F.3d 1263, 1284 (2d Cir. 1997); *Doe v. Kelley*, 961 F. Supp. 1105, 1111 (W.D. Mich. 1997).

As discussed above, we also do not believe that the defendant has

met his burden of presenting by the "clearest proof" that the statutory scheme at issue is so punitive in effect so as to negate the nonpunitive legislative intent. See *Hendricks,* 521 U.S. at 361, 138 L. Ed. 2d at 515, 117 S. Ct. at 2081. Accordingly, we hold that the registration and notification provisions at issue do not violate the *ex post facto* clauses of the United States and Illinois Constitutions. Moreover, as we do not believe that the registration and notification provisions constitute punishment, we reject the defendant's bill of attainder argument.

■ In addition, we conclude that the enhanced penalty provision of the Registration Act does not violate the United States or Illinois *ex post facto* clause. Section 10 of the Registration Act was amended, effective June 1, 1996, to provide that any person who violates the Registration Act is guilty of a Class 4 felony. See 730 ILCS 150/10 (West 1996). Prior to this amendment, a violation of the Registration Act constituted a Class A misdemeanor. See 730 ILCS 150/10 (West 1994). The indictment against the defendant alleged that he committed the offense of unlawful failure to register as a sex offender on September 18, 1996. As the amendment to section 10 of the Registration Act occurred prior to the date that the defendant committed this offense, we do not believe that the enhanced penalty of the amendment violates the *ex post facto* clause in this case.

## IV. DUE PROCESS

The defendant contends that, because the registration and notification laws do not provide for a hearing, he has been deprived of his right to due process. He argues that he has "suffered the infamy and degradation of the notification provisions" and that the statutes at issue affect his fundamental right to travel.

■ In order to trigger the protections of the due process clause, the defendant must show that the registration and notification statutes at issue deprive him of a protected liberty or property interest. *Lanni,* 994 F. Supp. at 855. We do not believe that the defendant has met this burden. The Registration Act merely compiles truthful, public information, and the Notification Law makes this information more readily available. See *Lanni,* 994 F. Supp. at 855. Any injury to the defendant's reputation is a result of his underlying conviction of a sex offense. In addition, the defendant fails to identify how the registration requirements impair his ability to travel. We therefore conclude that the defendant has failed to show that the registration and notification laws at issue deprive him of a protected liberty or property interest.

Even if the defendant could prove the deprivation of a liberty or property interest, his due process claim must still fail. The defendant

contends that these statutes do not provide for a hearing to determine the dangerousness of the offender. However, as the Registration Act and Notification Law subject all sex offenders as defined by the Registration Act to the registration and notification provisions, law enforcement authorities have no discretion to determine which offenders would be exposed to public dissemination. Thus, a hearing would serve no purpose. See *Lanni*, 994 F. Supp. at 855. For these reasons, we reject the defendant's due process argument.

## V. VIOLATION OF PLEA AGREEMENT

■ The defendant next contends that the Notification Law violates his right to ·due process as the terms of his plea agreement did not include community notification of his conviction. Due process protections require that a plea agreement be made voluntarily and intelligently. *People v. Burt*, 168 Ill. 2d 49, 64 (1995). A defendant must therefore have an understanding of the charge and the consequences of the plea. *Brady v. United States*, 397 U.S. 742, 748, 25 L. Ed. 2d 747, 756, 90 S. Ct. 1463, 1469 (1970).

The requirement that a defendant have an understanding of the consequences of a plea, however, extends only to direct consequences and not to collateral consequences. *People v. Maury*, 287 Ill. App. 3d 77, 82 (1997). We note that the Illinois Appellate Court, First District, concluded in *Starnes* that registration requirements similar to those at issue in the instant case impose only a collateral consequence upon conviction as they do not constitute punishment. *Starnes*, 273 Ill. App. 3d at 915. Similarly, we believe that the notification provisions at issue constitute only a collateral consequence of the defendant's conviction rather than a penalty or enhancement of his sentence. Since the registration and notification requirements constitute collateral consequences of the defendant's conviction, we conclude that the Registration Act and Notification Law do not invalidate the terms of his plea agreement. In addition, as the statutes at issue are carefully tailored to meet the legislature's purpose of protecting the community, we reject the defendant's argument that these laws are fundamentally unfair.

## VI. RIGHT TO PRIVACY

■ For his final argument, the defendant contends that the Registration Act and Notification Law violate his right to privacy by disseminating information concerning his address, causing him embarrassment and ridicule. However, the defendant's interest in information concerning his home address is not within the "zone of privacy" protected under the Constitution. See *Carey v. Population Services International*, 431 U.S. 678, 684-85, 52 L. Ed. 2d 675, 684, 97 S. Ct.

2010, 2015-16, (1977) (only personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education are within the "zone of privacy").

The defendant also argues that the information required by the Registration Act is not "freely available" to the public and would otherwise require a diligent search of courthouse files, county archives, and local police stations. However, as the defendant acknowledges, the information contained in the notification (the offender's name, address, date of birth, and conviction) is already a matter of public record. The defendant cannot argue that the compilation and dissemination of truthful information that is already, albeit less conveniently, a matter of public record constitutes a legitimate privacy interest. See *Kelley*, 961 F. Supp. at 1112. In addition, as discussed above, any attendant consequences, such as embarrassment or ridicule, are caused by the offender's status as a felon and not as a direct result of the notification. See *Lanni*, 994 F. Supp. at 853. For all these reasons, we reject the defendant's argument.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and HUTCHINSON, JJ., concur.