FOURTH DIVISION
March 31, 2006

1-04-1109

| | | |
|---|---|---|
| *In re* PHILLIP C., a minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Phillip C., | ) | Honorable |
| | ) | Terrence V. Sharkey, |
| Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

After his arrest on March 27, 2003, the State filed a petition for adjudication of wardship over defendant Phillip C., a 16-year-old minor, alleging armed robbery and aggravated kidnapping of a minor as the bases for wardship. After a jury trial conducted pursuant to the extended juvenile jurisdiction prosecutions act (EJJ) (705 ILCS 405/5-810 (West 2002)), defendant was convicted of aggravated kidnapping of Miguel B., a 17-year-old.

The circuit court sentenced defendant to an indeterminate period of time at the Juvenile Department of Corrections. The circuit court also imposed a 20-year adult sentence, which was automatically stayed and would not be executed unless he violated the conditions of his juvenile sentence (705 ILCS 405/5-810(4)(ii) (West 2002)). By virtue of his conviction for

aggravated kidnapping of a minor, defendant was also required to register as a sex offender pursuant to section 2(B)(1.5) of the Sex Offender Registration Act (Registration Act) (730 ILCS 150/2(B)(1.5) (West 2002)).  On appeal, defendant argues that (1) the Registration Act is unconstitutional as applied to him and (2) the circuit court's imposition of a 20-year adult sentence was excessive.  For the following reasons, we reject defendant's as-applied challenge to the Registration Act and affirm the circuit court's imposition of a 20-year adult sentence.

BACKGROUND

The facts of this case are largely undisputed.  At trial, Miguel B. testified that as he was standing by his car on the afternoon of March 27, 2003, defendant came up from behind him, stuck a black comb-knife in his back, forced him into the car, and told him to "drive."  As Miguel drove, defendant asked Miguel whether he belonged to a gang or had any gang tattoos.  When Miguel said that he did not, defendant lifted up Miguel's shirt and pant legs apparently searching for tattoos.  Defendant then took Miguel's wallet and told him to drive to the criminal courts building at 26th and California.

As Miguel approached the criminal courts building, he spotted Cook County sheriff's deputy Thomas Scalise parked on the opposite side of the street.  Miguel swerved toward Deputy Scalise's car, stopping about two feet shy of hitting the car, and

exited his car. Deputy Scalise then arrested defendant.

Deputy Scalise testified that he was parked outside of the criminal courts building when a car suddenly swerved toward him. After the car stopped just short of hitting his car, Miguel B. jumped out of the car and told him that defendant, who was sitting in the passenger seat, had a gun. Deputy Scalise arrested defendant. Deputy Scalise testified that he saw a comb- knife on the car floor in front of the passenger seat.

Officer Antonio Torres testified that he was assigned to investigate the incident. When he arrived at the scene, he was given Miguel's wallet and a black comb-knife from one of the officers already at the scene.

Defendant presented no evidence. After closing arguments, the jury found defendant guilty of aggravated kidnapping and not guilty of armed robbery.

During the sentencing hearing, the State introduced defendant's prior admissions of guilt to unlawful use of a weapon, unlawful possession of ammunition, aggravated robbery, and robbery. The State also noted that defendant had been on probation for robbery at the time he kidnaped Miguel B. Defendant presented several character witnesses in mitigation.

After argument, the circuit court discussed each aggravating and mitigating factor listed in sections 5-5-3.1 and 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2002)) and whether each factor was applicable to the case at bar. In aggravation, the circuit court noted that defendant's conduct threatened serious harm, defendant had a prior criminal history, the imposed sentence was needed to deter others from committing similar acts, and defendant was on probation when he

committed the kidnapping. In mitigation, the court found that defendant's imprisonment would entail an excessive hardship for his four-year-old daughter.

Because of defendant's prior criminal history, the court denied defendant's request to be placed on probation and sentenced him to an indeterminate period of time in the Juvenile

Department of Corrections. In determining defendant's adult sentence, the court noted that, under the EJJ, should defendant violate the terms of his juvenile sentence, the adult sentence would kick in and, because defendant was convicted of a Class X felony, he would be facing a minimum of six years, which the court characterized as a "substantial" amount of time. In order to keep defendant "on the straight and narrow," the court imposed a 20-year adult sentence, but expressed the hope that that sentence would never be executed. This appeal followed.

ANALYSIS

I. Sex Offender Registry

Defendant first argues that because there was no evidence of sexual conduct or motive in connection with his kidnapping Miguel B., requiring him to register as a sex offender violates his rights to due process, privacy, and equal protection under both the United States and Illinois Constitutions. Defendant asks this court to find the Registration Act unconstitutional as applied to him.

The State concedes that there was no actual "sexual" evidence presented in this case, but maintains that the legislature had a rational basis for including aggravated kidnapping of a minor as a triggering offense under the Registration Act.  Relying on *People v. Fuller*, 324 Ill. App. 3d 728 (2001), the State argues that the offense of aggravating kidnapping of a minor can be a "precursor" to other offenses which involve the sexual abuse or exploitation of a child.

It is well established that "[a]ll statutes are presumed to be constitutional, and the burden of rebutting that presumption is on the party challenging the validity of the statute to demonstrate clearly a constitutional violation." *People v. Greco*, 204 Ill. 2d 400, 406 (2003), citing *People v. Sypien*, 198 Ill. 2d 334, 338 (2001).  This presumption means that, if possible, we must construe the statute "so as to affirm its constitutionality and validity." *Greco*, 204 Ill. 2d at 406, citing *People v. Fuller*, 187 Ill. 2d 1, 10 (1999). Whether a statute is constitutional is a question of law that we review *de novo*.  *People v. Malchow*, 193 Ill. 2d 413, 418 (2000).

In this case, defendant has chosen to attack the Registration Act on an "as applied" basis as violative of his rights to procedural and substantive due process, privacy, and equal protection of the laws.  Our supreme court, however, has rejected the argument that the Registration Act implicates the right to privacy under either the United States or Illinois Constitution.  See *People v. Cornelius*, 213 Ill. 2d 178, 196-97 (2004); *Malchow*, 193 Ill. 2d at 425-26.  Moreover, we have found

5

1-04-1109

that a defendant challenging whether he should have to register as a sex offender is making a due process and not an equal protection claim.  See *People v. Johnson*, No. 1-04-1292, slip op. at 9 (January 31, 2006) (finding defendant's challenge was "more a due process claim than an equal protection claim" where he was not "contend[ing] that the classification of some individuals as sexual offenders is unconstitutional" "[r]ather, *** that he does not belong within the classification").  Even though the "standards used to determine the constitutionality of a statute under equal protection and due process grounds are identical" (see *Johnson*, slip op. at 9, citing *People v. Williams*, 358 Ill. App. 3d 363, 366 (2005)), we will confine our discussion to defendant's substantive and procedural due process arguments.

A.   Substantive Due Process

To withstand a due process challenge under the rational basis test,[1] the statute in question needs to bear only a rational relation to a legitimate legislative interest and be

---

[1] Though defendant makes a perfunctory argument that this Court should apply strict scrutiny, every court that has addressed the constitutionality of the Registration Act has found that the Act does not implicate a fundamental right and, thus, has applied a rationality level of review.  See *Johnson*, slip op. at 9-10; *Fuller*, 324 Ill. App. 3d at 731-32; *People v. Malchow*, 306 Ill. App. 3d 665 (1999).

neither arbitrary nor discriminatory. *People v. Johnson*, slip op. at 10. In applying this test, the court first identifies the public interest the statute is intended to protect, examines whether the statute bears a reasonable relationship to that interest, and then determines whether the method used to protect or further that interest is reasonable. *People v. Lindner*, 127 Ill. 2d 174, 180 (1989).

The Registration Act was enacted to protect children from sexual assault and sexual abuse by providing the police and public with information regarding the whereabouts of convicted sex offenders.[2] *People v. Adams*, 144 Ill. 2d 381, 386 (1991); *Johnson*, slip op. at 10, citing *People v. Logan*, 302 Ill. App. 3d 319, 328-29 (1998); *Fuller*, 324 Ill. App. 3d at 731 ("The Registration Act was enacted by the Illinois Legislature 'to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse. (84th

---

[2] Under the Registration Act, a "sex offender" is defined as anyone (other than a parent of the victim) who commits the offense of aggravated kidnapping of a minor. See 730 ILCS 150/2(B)(1.5) (West 2002).

1-04-1109

Ill. Gen. Assem., House Proceedings, June 23, 1986, at 208.) The Registration Act was designed to aid law enforcement agencies ***' by making 'the habitual offender's address *** readily available to law enforcement agencies.' [Citation.]").

Defendant does not question the legitimacy of the Registration Act's purposes (*i.e.*, protecting children from sex crimes and aiding law enforcement by letting them know where sexual offenders live).  He only questions whether, in this case, those purposes are furthered by requiring him to register as a sex offender; in other words, under the rational basis test, whether the method used to protect or further the legislature's interests (requiring him to register as a sex offender) is reasonable.  See *Lindner*, 127 Ill. 2d at 180.  Two panels of this court have addressed this very issue but have come to two divergent results.[3]

_____

[3] In *People v. Hall*, our supreme court had granted a

8

1-04-1109

petition for leave to appeal in a case where the defendant was
arguing that the Registration Act was "unconstitutional as
applied to him because there [was] no evidence that his offense
[of aggravated kidnapping of a minor] was sexually motivated."
See *People v. Hall*, 217 Ill. 2d 324 (2005).  The court did not
address the issue, however, and decided the case on a procedural
ground.  See *Hall*, 217 Ill. 2d 324.

In *Fuller*, the defendant stole a van with two children in the back. *Fuller*, 324 Ill. App. 3d at 730. Instead of immediately releasing the children, the defendant drove around, stopping twice to view Christmas lights. *Fuller*, 324 Ill. App. 3d at 730. When the van was stopped at a light, the children opened the van's unlocked door and ran to a nearby service station. *Fuller*, 324 Ill. App. 3d at 730. At no point did defendant touch the children, though he spoke briefly with them in response to their questions. *Fuller*, 324 Ill. App. 3d at 730. Defendant was convicted of aggravated kidnapping and ordered to register as a sex offender. *Fuller*, 324 Ill. App. 3d at 729-30.

On appeal, the defendant argued "that section 2(B)[(105)] of the Registration Act violat[ed] due process because the definition of sex offender is overly broad" and "there is no rational relationship between the offense of aggravated kidnaping and the legislative intent of the Registration Act." *Fuller*, 324 Ill. App. 3d at 731. The court rejected defendant's arguments. Finding that the purpose of the Registration Act was to "help law enforcement protect children from sexual assault and sexual abuse," the court found a rational connection between the offense of aggravated kidnapping and that purpose. *Fuller*, 324 Ill. App. 3d at 732. The court went on to note:

"It is particularly disingenuous for the defendant to argue that there is no rational relationship between the kidnaping of a child and the purpose of protecting

10

children from the increasing incidence of sexual assault and sexual abuse. The most obvious connection between the offenses listed in section 2(B)(1.5) and the purpose of the Registration Act is that kidnaping or unlawful restraint of a minor is often a precursor offense to juvenile pimping or exploitation of a child, which are, indisputably, within the purview of the Registration Act's purpose." *Fuller*, 324 Ill. App. 3d at 733.

The court also noted that when asked what he had planned to do with the children, the defendant " 'stated he was going to find a hotel room and ask the girl if she had any friends.' " *Fuller*, 324 Ill. App. 3d at 733.

Recently, a different division of this court disagreed with *Fuller*. See *People v. Johnson*, No. 1-04-1292 (January 31, 2006). In *Johnson*, the defendant and four other men kidnaped a 20-month-old girl in order to collect a ransom from her grandfather. *Johnson*, slip op. at 1. After defendant pleaded guilty to aggravated kidnapping, he was sentenced to 17 years in the Illinois Department of Corrections and ordered to register as a sex offender. *Johnson*, slip op. at 1-2. On appeal, the defendant argued that the Registration Act was unconstitutional as applied to him where his offense was not sexually motivated and had no sexual purpose. *Johnson*, slip op. at 2-3.

A majority of the court agreed, noting that "[t]he record

indicate[d] that defendant's offense of aggravated kidnaping was not sexually motivated" and "[t]here were no allegations of any kind that defendant or codefendants committed or attempted to commit any sexual assault against the minor." *Johnson*, slip op. at 11. Specifically, the court found:

> "[T]here is no rational basis for requiring
> defendant to register as a sex offender where he has no
> history of committing sex offenses and his offense of
> aggravated kidnaping was not sexually motivated and had no
> sexual purpose. Consequently, defendant has met his burden
> of establishing that the Registration Act, as applied to
> him, violates his substantive due process rights under the
> state and federal constitutions where his designation as a
> sex offender bears no rational relationship to the State's
> interest in protecting the public from convicted sex
> offenders." *Johnson*, slip op. at 12. See *State v. Reine*,
> No. 19157 (Ohio App. 2d Dist. 2003); *State v. Robinson*,
> 873 So. 2d 1205 (Fla. 2004); *People v. Moi*, 8 Misc. 3d
> 1012(A) (N.Y. County Ct.2005).

The majority distinguished *Fuller* by arguing that there was evidence in that case that the crime was sexually motivated:

> "The facts in *Fuller* indicated that the crime was
> sexually motivated, as shown by the reviewing court's
> following observations and comments:
>
> > 'In defendant's own case, the arresting

12

police officer testified that when the officer asked defendant what he planned to do with the children, defendant "stated he was going to find a hotel room and ask the girl if she had any friends."  This statement, eerily suggestive of the nature of defendant's plans for the children, in conjunction with defendant's conduct in failing to release the children themselves, supports the logical nexus between the act of kidnaping a child and the very real possibility of subsequent sexual exploitation of that child.'"  *Johnson*, slip op. at 11-12, quoting *Fuller*, 324 Ill. App. 3d at 733-34.

Justice Wolfson, however, dissented.  Agreeing with *Fuller*'s "precursor" argument, he found that "[i]t is the nature of the crime - kidnaping a child - that triggers the Registration Act provisions."  *Johnson*, slip op. at 14 (Wolfson, J., dissenting). He went on to argue:

"It does not take much imagination to add to the list of reprehensible acts an offender might commit. Once an offender makes the decision to commit the aggravated kidnaping of a child, there is a very real possibility the child will become a victim of sexual abuse.  Our reports are filled with such cases.

In this case the crime was interrupted while it was in progress.  The child was being held in a stolen van when the police arrived.  The legislature has the

13

authority to protect children from such an offender. Requiring him to register his name and address with law enforcement officials does not offend due process of law." *Johnson*, slip op. at 15 (Wolfson, J., dissenting).

We agree with both the holding in *Fuller* and the views espoused by Justice Wolfson in his dissent in *Johnson*.

The legislature clearly intended that individuals who commit the offense of aggravated kidnapping of a minor register under the act as a sex offender. We, like the *Fuller* court, believe there to be a rational connection between the interests the Registration Act seeks to further (protecting children and others from sex offenders and aided law enforcement) and the method used to protect or further those interests (in this case, making kidnapers of children like defendant register as a sex offender), regardless of whether there was any "sexual" evidence in a particular case. See *Fuller*, 324 Ill. App. 3d at 733.

Though there is no evidence that defendant sexually assaulted Miguel or that his motivation in kidnapping Miguel was sexual in nature, we find that the legislature could rationally conclude that kidnapers of children pose such a threat to sexually assault those children as to warrant their inclusion in the sex offender registry. See *Johnson*, slip op. at 15 (Wolfson, J., dissenting); *Fuller*, 324 Ill. App. 3d at 733; *State v. Brown*, 273 Wis. 2d 785, 680 N.W.2d 833 (2004); but see *Johnson*, slip op.

14

at 12, citing *State v. Reine*, No. 19157 (Ohio App. 2d Dist.2003);
*State v. Robinson*, 873 So. 2d 1205 (Fla. 2004); and *People v. Moi*, 8 Misc. 3d 1012(A), 801 N.Y.S.2d 780 (N.Y. County Ct. 2005);
*People v. Bell*, 3 Misc. 3d 773, 778 N.Y.S.2d 837 (2003).


                    B.   Procedural Due Process

Defendant also argues that the Registration Act violates his right to procedural due process because the registration requirement is automatic under the Act and there is no opportunity to challenge that requirement.

An attack based upon procedural due process focuses upon the specific procedures employed in a statute and whether that statute provides both an opportunity to be heard at a meaningful time and in a meaningful manner.  See *People v. R.G.*, 131 Ill. 2d 328, 353 (1989).  In order to implicate this right, the defendant must first show that the registration and notification statutes at issue deprive him of a protected liberty or property interest.  See *Logan*, 302 Ill. App. 3d at 332.

Even assuming that the Registration Act implicates a protected liberty or property interest (*cf. People v. Stork*, 305 Ill. App. 3d 714 (1999) (finding section 9.3 did not implicate any protected liberty interests)), defendant had a meaningful opportunity to be heard at trial (see *In re J.R.*, 341 Ill. App. 3d at 784, 796-97 (2003); *Logan*, 302 Ill. App. 3d at 332-33).

As defendant points out, a sex offender is not permitted to

15

live or be within 500 feet any school building or public park. See 720 ILCS 5/11-9.3(a), (b), (b-5) (West 2002); 720 ILCS 5/11-9.4 (a), (b), (b-5) (West 2002). Sex offenders are also not permitted to "operate, manage, be employed by, volunteer at, be associated with, or knowingly be present at any facility providing programs or services exclusively directed towards" minors.  720 ILCS 5/11-9.4(c) (West 2002).

However, defendant had the opportunity at his trial by jury to challenge whether he committed aggravated kidnapping. Defendant has not indicated what more process is "due."  See *In re J.R.*, 341 Ill. App. 3d at 796-97; see also *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 7-8 155 L. Ed.2d 98, 105, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003) (finding that even if liberty interest is implicated by sex offender registry, no need for further process than trial that had been provided).

## II.  Adult 20-year Sentence

Defendant next argues that the circuit court abused its discretion when it imposed a 20-year adult sentence because the court had offered an 8-year sentence for both the aggravated kidnapping and armed robbery during the pretrial Rule 402 conference (177 Ill. 2d R. 402) and defendant was acquitted of the latter charge; the court had noted that the minimum sentence defendant was facing for committing a Class X felony was "substantial and;" the court indicated it was imposing a 20-year

sentence to ensure defendant would comply with his juvenile sentence.

Under the EJJ, the circuit court is required to impose both a juvenile sentence and "an adult criminal sentence in accordance with the provisions of Chapter V of the Unified Code of Corrections." 705 ILCS 405/5-810(4)(ii) (West 2002); *In re Matthew M.*, 335 Ill. App. 3d 276 (2002); see 730 ILCS 5/1-1-2 (West 2002) (stating the objectives in fashioning a sentence should be to "(a) prescribe sanctions proportionate to the seriousness of the offenses and permit the recognition of differences in rehabilitation possibilities among individual offenders; (b) forbid and prevent the commission of offenses; (c) prevent arbitrary or oppressive treatment of persons adjudicated offenders or delinquents; and (d) restore offenders to useful citizenship"). The "adult sentence" does not kick in unless and until the defendant violates the provisions of his juvenile sentence. 705 ILCS 405/5-810(4)(ii) (West 2002).

Initially, though not raised by the parties, we question whether defendant has standing to complain about the conditional adult sentence imposed by the circuit court. See *In re J.W.*, 346 Ill. App. 3d 1, 15 (2004) (finding the defendant's constitutional challenge to the revocation of the stay provision was "premature until a petition to revoke the stay is filed"). As noted above, that adult sentence is automatically stayed and will not be executed unless defendant violates the terms of his juvenile sentence. See 705 ILCS 405/5-810(4)(ii) (West 2002). Thus, defendant has it within his own power to determine whether the adult sentence will kick in.

Assuming, for the sake of argument, that defendant has standing, we find that the circuit court did not abuse its discretion when it imposed the 20-year adult sentence.

17

 As defendant notes, because aggravated kidnapping is a Class X felony (720 ILCS 5/10-2(b) (West 2002)), he was facing no less than 6 years and no more that 30 years in prison (730 ILCS 5/5-8-1(a)(3) (West 2002)).  In fashioning the sentence, the circuit court painstakingly discussed each statutory aggravating and mitigating factor and whether any of those factors were applicable.

First, the 20-year sentence that the circuit court imposed, being within the statutory range, is presumed proper.  See *People v. Malin*, 359 Ill. App. 3d 257, 264-65 (2005).   Second, though the circuit court noted that the minimum sentence for a Class X felony was "substantial," the court in no way indicated that the minimum sentence was the appropriate sentence for defendant.  Nor does defendant cite any case where such a comment has been held to lock the circuit court into imposing that sentence. Third, though the 20-year sentence was intended to deter defendant from violating his juvenile sentence, defendant cites no case where the use of the carrot/stick approach to sentencing has been found to be improper, much less an abuse of discretion. Attempting to deter the individual from committing further crimes is as much an appropriate sentencing objective as is restoring him to useful citizenship.  730 ILCS 5/1-1-2 (a) through (d) (West 2002).

In light of defendant's prior criminal history, including the fact that he was on probation for robbery when he kidnaped Miguel B., we find that the 20-year adult sentence was neither excessive nor an abuse of discretion.

Affirmed.

GREIMAN and MURPHY, JJ., concur.