Franklin Leeroy DEAN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–00–00303–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 16, 2001.

Rehearing Overruled Nov. 8, 2001.

Kenneth Smith, Houston, for appellants.

Kelly Ann Smith, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and SEYMORE.

## OPINION

SEYMORE, Justice.

Without entering into a plea agreement, appellant, Franklin Dean, pled guilty to the offense of indecency with a child. TEX. PEN.CODE ANN. § 21.11 (Vernon Supp. 2001). After conducting a pre-sentencing investigation, the court assessed punishment at ten (10) years confinement in the Institutional Division of TDCJ. In accordance with Chapter 62 of the Texas Code of Criminal Procedure, appellant was required to register as a sex offender. Challenging the constitutionality of the registration portion of his conviction, appellant now raises four issues for review. We will affirm.

## Ex Post Facto Violation

In his first issue for review, appellant contends the 1999 amendments to the Texas Sex Offender Registration Program (the "Act") requiring registration as a sex offender violate the ex post facto clause of the U.S. Constitution.[1] TEX.CODE CRIM. PROC. ANN. Art. 62.01 et seq. (Vernon Supp.2001). According to the charging instrument, appellant exposed himself to a 8 year old child on or about May 15, 1999.

1. Citing Texas Rule of Appellate Procedure 33.1, the State urges that appellant waived his ex post facto issue by not objecting on such grounds during punishment. Because an individual may not waive the ex post facto prohibition against punishment, however, failure to comply with Rule 33.1 does not result in waiver of this argument. *Ieppert v. State,* 908 S.W.2d 217, 220 (Tex.Crim.App.1995).

2. Effective September 1, 1999, persons convicted of indecency with a child are subject to

The public disclosure amendments were effective September 1999. TEX.CODE CRIM. PROC. ANN. Arts. 62.03(f), 62.04(g) (Vernon Supp.2001).[2]

Whenever an attack upon the constitutionality of a statute is presented, we commence with the presumption that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App.1978). The burden rests upon the individual who challenges the statute to establish its unconstitutionality. *Id.* It is the duty of the court to uphold the statute if a reasonable construction can be ascertained which will render it constitutional and carry out the legislative intent. *Ely v. State,* 582 S.W.2d 416 (Tex.Crim.App.1979). If a statute is capable of two constructions, one of which sustains its validity, the courts will give to it the interpretation that sustains its validity. *Townsend v. State,* 427 S.W.2d 55 (Tex.Crim.App.1968).

We begin our analysis of appellant's *ex post facto* claim with the declaration in the U.S. Constitution that "[n]o state shall ... pass any ... ex post facto Law." U.S. CONST. art. I, § 10, cl. 1. The Supreme Court addressed the *ex post facto* issue for the first time in *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798). The *Calder* court established the following categories to consider in deciding whether a law violates the ex post facto clause:

the following disclosure in their community of residence: newspaper publication of their *full name,* age, gender, *photograph (or the internet address of a website displaying such photo),* risk level, *numeric* street *address (or physical address if numeric street address not available),* zip code, and a brief description of the offense. Act of June 19, 1999, 76th Leg., R.S., ch. 1415, §§ 12(f), 13(g), arts. 62.03, 62.04(g), 1999 Tex. Gen. Laws 4836–37. (September 1999 amendments in *italics*).

1st. Every law that makes an action done before the passing of the law, and which was *innocent*, when done, criminal; and punishes such action. 2d. Every law that *aggravates a crime*, or makes it *greater* than it was, when committed.3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender*.

3 U.S. (3 Dall.) at 390 (emphasis in original). The Supreme Court has repeatedly followed the *Calder* Court's 200 year-old exposition of the U.S. Constitution's ex post facto clause, most recently in *Carmell v. Texas.* 529 U.S. 513, 522, 525, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000).

■ The third *Calder* category is most relevant to the instant case. Under this rule, the Act and its amendments would violate the ex post facto clause if it "changes the punishment, and inflicts a greater punishment than the law annexed to the crime, when committed." *Calder*, 3 U.S. (3 Dall.) at 390. Therefore, the amendments effectively violate ex post facto prohibitions in the U.S. Constitution if the following two questions are answered affirmatively: (1) Do the amendments apply retrospectively to appellant? (2) Do the amendments constitute punishment? Clearly, the amendments were applied retrospectively; therefore, our decision in this case turns on whether the 1999 amendments are punitive in nature or merely regulatory. The amendments are not ex post facto laws if they are regulatory, or civil in nature. *See, e.g., Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d

742 (1980). The overriding inquiry in such situations was enunciated by the Court in *DeVeau v. Braisted,* 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960):

> "The question in each case, where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation . . . ."

363 U.S. at 160, 80 S.Ct. 1146.

Initially, we note that the vast majority of federal and state courts confronted with attacks on the validity of sex-offender registration statutes have concluded that they pass constitutional muster. Examples of federal decisions follow: *Cutshall v. Sundquist,* 193 F.3d 466 (6th Cir.1999) (Tennessee Sex Offender Registration and Monitoring Act did not violate ex post facto clause); *Russell v. Gregoire,* 124 F.3d 1079 (9th Cir.1997) (statute showed regulatory, not punitive, effect, so no violation of ex post facto clause); *Doe v. Pataki,* 120 F.3d 1263 (2d Cir.1997) (neither registration nor notification provisions under the New York act inflicted punishment under ex post facto clause); *E.B. v. Verniero,* 119 F.3d 1077 (3d Cir.1997) (notification under New Jersey Registration and Community Notification Laws did not constitute punishment for purposes of ex post facto and double jeopardy clauses); *Artway v. Attorney General,* 81 F.3d 1235 (3d Cir.1996) (challenge to notification aspects of New Jersey law not ripe, but registration requirements do not violate ex post facto clause); *Roe v. Farwell,* 999 F.Supp. 174 (D.Mass.1998) (registration requirements of Massachusetts law do not violate the ex post facto clause, however, unlimited public access provisions are too broad to be constitutional); *Lanni v. Engler,* 994 F.Supp. 849

(D.Mich.1998) (purpose of law to protect public, not to punish offenders, so not an ex post facto law); *W.P. v. Poritz*, 931 F.Supp. 1199 (D.N.J.1996) (effect of law is not to constitute punishment, so not ex post facto).

Sister state jurisdictions upholding such registration and notification laws against ex post facto challenges are as follows: *Robinson v. State*, 730 So.2d 252 (Ala.Cr. App.1998) (registration and notification requirements are not punishment); *Patterson v. State*, 985 P.2d 1007 (Alaska App. 1999) (stated legislative intent is regulatory); *People v. Castellanos*, 21 Cal.4th 785, 88 Cal.Rptr.2d 346, 982 P.2d 211 (1999) (no legislative intent to punish, and any effect not so punitive as to outweigh remedial intent); *Jamison v. People*, 988 P.2d 177 (Colo.App.1999) (intent of statute remedial, not punitive); *Modi v. State*, No. CR A. IN95-08-1733, 1999 WL 167835 (Del.Super. Feb. 22, 1999) (law not ex post facto); *Ray v. State*, 133 Idaho 96, 982 P.2d 931 (1999) (registration act a collateral consequence of guilty plea); *Doe v. Criminal History Systs. Bd.*, Civ. Action No. 96-6046, 1997 WL 100878 (Mass.Super. Feb. 25, 1997) (intent to protect public, and effect non-punitive); *State v. Torres*, 254 Neb. 91, 574 N.W.2d 153 (1998) (sex-offender statute collateral consequence of guilty plea); *State v. Costello*, 138 N.H. 587, 643 A.2d 531 (1994) (any punitive effect of registration statute de minimis); *Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367 (1995) (intent clearly remedial in purpose, not punitive); *Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616 (1999) (law serves non-punitive goals of public safety, and effect not so harsh as to render it punishment); *Kitze v. Commonwealth*, 23 Va.App. 213, 475 S.E.2d 830 (1996) (registration requirement not penal); *Snyder v. State*, 912 P.2d 1127 (Wyo.1996) (intent not to inflict greater punishment, but to facilitate law enforcement and protect children).

■ A variety of tests have been used to answer the question of whether sex-offender registration statutes are punitive or regulatory; however, the prevailing trend is to follow a two-part analysis. First, we must determine the intent of the legislature in passing the Act (i.e., did it intend for the Act to be punitive, or was the goal merely to provide a regulatory framework?). Second, we must determine whether, despite a stated non-punitive intent, the effect of the Act is "so punitive either in purpose or effect as to negate that intention." *United States v. Ward*, 448 U.S. at 248–49, 100 S.Ct. 2636.

■ Our analysis of the Legislature's intent begins with a review of pertinent language in the amendments to the Act. Local law enforcement must disclose the identity, location and additional information regarding the offender via newspaper. TEX.CODE CRIM. PROC. ANN. Art. 62.03(f) (Vernon Supp.2001). Also, law enforcement must provide the superintendent of local school districts with "any information the authority determines is *necessary to protect the public* ...." *Id.* art. 62.03(f) (emphasis added). Article 62.04, which applies to the same individuals who later decide to change address, sets forth identical language regarding newspaper and school district disclosure requirements. *Id.* art. 62.04(g). We conclude that the overriding intent appears to be regulatory, i.e. prevention of criminal conduct and protection for the community.

In addition to this statutory evidence of non-punitive intent, the Tenth Court of Appeals has recently concluded that the Legislature's intent in passing the Act was non-punitive. *See In re M.A.H.*, 20 S.W.3d 860, 863 (Tex.App.—Fort Worth 2000, no pet.). Specifically, the Waco court reached the following conclusion:

[I]n enacting the current registration and notification plan, the legislature considered the unique threat sex offenders present to public safety, the high rate of recidivism among sex offenders, the low incidence of rehabilitation among sex offenders, and that sexual misconduct often begins as a juvenile.... [T]he legislature's goal in passing the registration and notification provisions was to advance public safety objectives by facilitating law enforcement's monitoring of sex offenders and by alerting members of the public who may be in an especially vulnerable situation to take appropriate precautions which could deter or prevent further crimes.

*Id.* Reaching the same conclusion, we join the overwhelming majority of jurisdictions and find that the Texas legislature did not have a primary intent to punish offenders by enacting the 1999 amendments to the Texas Sex Offender Registration Program.

Following the two step analysis prescribed in *United States v. Ward,* we must now examine whether the Act "transform[s] what was clearly intended as a civil remedy into a criminal penalty." *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). In making this determination, many courts have looked to a series of factors set out by the U.S. Supreme Court in *Kennedy v. Mendoza–Martinez:*

[1] Whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment—retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7]

whether it appears excessive in relation to the alternative purpose assigned

372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) (footnotes omitted) (bracketed numbers added). *See Roe v. Farwell,* 999 F.Supp. 174 (D.Mass.1998); *State v. Burr,* 598 N.W.2d 147 (N.D.1999); *State v. Cook,* 83 Ohio St.3d 404, 700 N.E.2d 570 (1998); *People v. Logan,* 302 Ill.App.3d 319, 235 Ill.Dec. 539, 705 N.E.2d 152 (Ill.App.1998); *Collie v. State,* 710 So.2d 1000 (Fla.App.1998); *State v. Pickens,* 558 N.W.2d 396 (Iowa 1997); *State v. Myers,* 260 Kan. 669, 923 P.2d 1024 (1996); *State v. Manning,* 532 N.W.2d 244 (Minn. App.1995); *State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062 (1994); *State v. Noble,* 171 Ariz. 171, 829 P.2d 1217 (1992).

Regarding the *Kennedy* factors, the Supreme Court has said that they are "neither exhaustive nor dispositive," but nonetheless "helpful." *Ward,* 448 U.S. at 249, 100 S.Ct. 2636. Not every state analyzes all seven factors. For example, the Kansas Supreme Court did not apply the factors as a pass/fail test or in a checklist fashion, but considered only those it found "provide[d] significant guidance." *Myers,* 923 P.2d at 1040. Other courts utilized each factor, albeit giving some more weight and consideration than others. *Cook,* 700 N.E.2d at 582–85. But even these jurisdictions note that there is "no absolute test to determine whether a retroactive statute is ... punitive...." *Id.* at 582. Most recognize that the court's task is "not simply to count the factors on each side, but to weigh them." *Noble,* 829 P.2d at 1224.

Bearing this in mind, we turn to our analysis of the Texas Act in light of the *Kennedy* factors. First, we must determine whether the sanction involves an affirmative disability or restraint. Pursuant to the Act, an offender must complete and file a registration form with the local law

enforcement authority in any municipality where he intends to reside for more than seven days. TEX.CODE CRIM. PROC. ANN. Art. 62.02(a) (Vernon Supp.2001). An offender is not prevented from coming and going within or without the state; he (or she) need only notify local law enforcement not later than the seventh day before the intended change of address. *Id.* Art. 62.04(a) (Vernon Supp.2001). After initial registration, a first-time offender must verify his address with local law enforcement each year. *Id.* art. 62.06(a). We conclude that the above amended disclosure provisions impose no specific affirmative disability or restraint on the offender.

The second *Kennedy* factor requires us to determine whether the "sanction", in this case the amended disclosure provisions of the act, has historically been regarded as a punishment. Some jurisdictions have concluded that public disclosure laws are a form of punishment for sex offenders. *See Noble,* 829 P.2d at 1222. Appellant argues that registration and public disclosure of his sex offenses is punitive and analogous to the wearing of a scarlet letter or is the incarnation of traditional stigmatization penalties such as pillories and branding. We initially note that historical shaming punishments are not identical to notification or public disclosures, in large part, because historical shaming punishments entailed more than the dissemination of information. *Kellar v. Fayetteville Police Dept.,* 339 Ark. 274, 284, 5 S.W.3d 402, 408 (1999). The intent of such punishment was punitive since whipping, branding, stockading, and banishment were the punishment for the offender's particular transgression. *Id.* Notification, on the other hand, occurs after the sex offender has been punished.

Moreover, such punishment "required the physical participation of the offender and typically required direct confrontation between the offender and members of the public." *Russell,* 124 F.3d at 1091; *Kellar,* 339 Ark. at 284, 5 S.W.3d 402. The purpose, method, and process of such punishment are completely different from public notification. We believe the better reasoning when addressing this historical element of the Texas Act is to first recognize that dissemination of information regarding criminal conduct, without more, is not punishment when done to advance a legitimate government purpose or objective. *Verniero,* 119 F.3d at 1099–1100; *Kellar,* 339 Ark. at 284, 5 S.W.3d 402. The more apt analogy to the public disclosure of sex-offender registry information is "the required dissemination of information generated by our criminal justice system and the subsequent dissemination of 'rap sheet' information to regulatory agencies, bar associations, prospective employers and interested members of the public." *Verniero,* 119 F.3d at 1100; *Kellar,* 339 Ark. at 284, 5 S.W.3d 402. Another traditional and comparable situation occurs when posters depicting an armed and dangerous individual are placed or published in the community. Because these analogies have not historically been regarded as punishment, we conclude that historical precedent does not demonstrate an objective punitive purpose for the Act's amended disclosure provisions. *See Kellar,* 339 Ark. at 285, 5 S.W.3d 402; *Cf., Verniero,* 119 F.3d at 1101.

The third factor in *Kennedy* requires us to determine whether the amended disclosure provisions of the Act apply to a finding of *scienter.*[3] States have taken at least two approaches with this factor. Some recognize that *scienter* "comes into play

---

**3.** The term "scienter" signifies an allegation setting out the defendant's previous "guilty" knowledge of facts constituting an offense. BLACK'S LAW DICTIONARY 1207 (5th ed.1979).

when the offender is adjudicated guilty of the underlying offense." *Collie*, 710 So.2d at 1010; *see also Manning*, 532 N.W.2d at 247–48 (concluding that, because the registration requirement is dependent upon the conviction of an underlying crime, there will necessarily be a finding of *scienter* ). Other states hold that there is no element of *scienter* inherent in the registration statute, stating rather that the "offender need only be released into the community to trigger the provisions of these statutes." *Cook*, 700 N.E.2d at 583; *Logan*, 235 Ill. Dec. 539, 705 N.E.2d at 159. We find no indication of a *scienter* requirement in the Texas Act; therefore, we conclude that release of an offender into the community is sufficient to trigger disclosure provisions in the Act. *See Kellar*, 339 Ark. 274, 284, 5 S.W.3d 402, 408 (reaching the same conclusion in reviewing a similar Arkansas statute). Accordingly, we hold this factor is not indicative of a punitive effect.

Under *Kennedy's* fourth factor, we must consider whether the amended disclosure provisions serve the traditional deterrent and retributive aims of punishment. While we understand that the registration requirement will deter recidivism in some registered offenders, it is equally likely that conviction and incarceration would be a deterrent. In any event, the existence of a deterrent effect, alone, does not render the entire Act punitive in nature. *Cf. United States ex rel. Marcus v. Hess*, 317 U.S. 537, 551, 63 S.Ct. 379, 87 L.Ed. 443 ("It is true that 'punishment, in a certain and very limited sense, may be the result of the statute before us so far as the wrongdoer is concerned,' but this is not enough to label it as a criminal statute."); *see also Burr*, 598 N.W.2d at 154; *Ward*, 869 P.2d at 1073; *Kellar*, 339 Ark. 274, 284, 5 S.W.3d 402, 408. Accordingly, we hold this factor is not indicative of a punitive effect.

Under the fifth *Kennedy* factor we determine whether the behavior to which the Act applies is already a crime. The Texas Act requires appellant to register, and thus disclose information, based on his conviction for sex crimes committed before the effective date of the amendment. *See* TEX.CODE CRIM. PROC. ANN. Arts. 62.02(a), 62.01(5)(A) (Vernon Supp.2001). Thus, we find that this factor appears indicative of a punitive effect.

The sixth factor in *Kennedy*—whether there is some purpose other than punishment that can rationally be associated with the amended disclosure provisions—is easily addressed. Clearly, the Act serves the dual purposes of protecting public safety and providing information to law enforcement authorities. Accordingly, we find that this factor is not indicative of a punitive effect.

The seventh and final *Kennedy* factor requires determination of whether the amended disclosure provisions are excessive in relation to fulfilling their original purpose, *i.e.*, protection for the public. This last factor requires a brief examination of the Act's disclosure amendments.

Any individual with a reportable conviction, as defined in Article 62.01 of the Act, must register with the local law enforcement authority in the municipality where he resides or intends to reside for more than seven days. *See* TEX.CODE CRIM. PROC. ANN. Arts. 62.02(a), 62.01 (Vernon Supp.2001). Not later than eight days after receipt of such registration, the law enforcement authority must publish notice of the registrant, in both English and Spanish, with the newspaper of greatest circulation for the county where the registrant intends to reside. *Id.* art. 62.03(e), 62.04(f). Law enforcement must also publish a duplicate notice the following week. *Id.* Regarding the substance of this notice, the Act provides for the "following

information *only*": the registrant's full name, age, gender, numeric street address or physical address, zip code, recent photograph, and a brief description of his offense. *Id.* arts. 62.03(f), 62.04(g) (emphasis added). In addition, where the registrant's victim is a child under 17, the authority must also provide notice to the superintendent of the public school district or private school administrator. *Id.* art. 62.03(e). The substance of this notice includes "any information necessary to protect the public, *except*" the registrant's social security number, driver's license number, or telephone number. *Id.* arts. 62.03(g), 62.04(h) (emphasis added).

After reviewing the limitations on public disclosure in the Act, we do not find the notice requirements to be excessive. The limitations strongly indicate that the sex-offender registration statute is tailored to address specific governmental interests of public protection. Therefore, we conclude that the Act and its 1999 amendments are not excessive in relation to its stated non-punitive purposes.

While there may be some punitive characteristics inherent in the registration and notification provisions, we find the Act is essentially regulatory. Accordingly, the Act and 1999 amendments do not violate the ex post facto clause in the United States Constitution. *See, e.g., Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742(1980). In reaching this decision, we also note that our holding is consistent with prior holdings of our sister Texas courts on the same issue. *See Rodriguez v. State,* 45 S.W.3d 685, 688 (Tex.App.—Fort Worth 2001, pet. filed) (concluding that the sex-offender registration requirement is remedial in nature and therefore not subject to an ex post facto analysis); *Saldana v. State,* 33 S.W.3d 70, 71–2 (Tex.

App.—Corpus Christi 2000, pet. ref'd) (holding that the sex offender registration requirement is not punitive and therefore not susceptible to ex post facto principles). Therefore, we overrule appellant's first issue for review.

## Cruel and Unusual Punishment

■ In appellant's second issue, he argues that the sex offender registration requirements of Chapter 62 violate the prohibition on cruel and unusual punishment set forth in Article I, Section 13 of the Texas Constitution. However, appellant does not designate in his brief, and we cannot find in the record, where he lodged his corresponding objection in the trial court. Without such objection, any error in this regard has been forfeited. *Rhoades v. State,* 934 S.W.2d 113, 120 (Tex.Crim.App.1996); Tex.R.App. P. 33.1. Accordingly, we overrule appellant's second issue for review.

## Outlawry

■ In appellant's third issue for review, he contends that the sex offender registration requirements of Chapter 62 violate the prohibition of "outlawry" found in Article I, Section 20 of the Texas Constitution. Outlawry is the withdrawal by civil society of all legal rights and protection from one of its offending members. Tex. Const. art. I, § 20 interp. commentary; *see also Peeler v. Hughes & Luce,* 909 S.W.2d 494, 499 (Tex.1995). However, even a constitutional claim cannot be raised for the first time on appeal. *See Robinson v. State,* 851 S.W.2d 216, 225 (Tex.Crim.App.1991); *Ransom v. State,* 789 S.W.2d 572, 584–85 (Tex.Crim.App. 1989); *Smith v. State,* 846 S.W.2d 515, 517 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). The record does not show that appellant presented his outlawry argument to the trial court. Therefore, we conclude

appellant has waived this complaint on appeal. *Id.;* Tex.R.App. P. 33.1.

 Assuming, for purposes of discussion, that appellant had preserved his outlawry issue, we nevertheless conclude it is without merit. The Texarkana Court of Appeals recently addressed this same issue and concluded as follows:

> The registration statute does not withdraw all legal rights and protection from [appellant], nor does it deny him the right to redress in the court system. Rather, it imposes duties on him as a result of his conviction that did not otherwise exist. Those duties place restrictions on the exercise of his ability to choose or move his place of residence and require him to keep in contact with law enforcement or community supervision personnel. This is not equivalent to withdrawing his rights under our judicial system or denying him access to the courts. This provision is designed for the protection of the citizens, not as a punishment of the convicted party. This contention of error is overruled.

*Gone v. State,* 54 S.W.3d 27, 37, (Tex. App.—Texarkana 2001, no pet.) (designated for publication). Accordingly, we overrule appellant's third issue for review.

### Accommodation of Federal Mandate

 In his final issue for review, appellant contends that the amendments to the Texas Sex Offender Registration statute postdating 1993 are unconstitutional because federal legislators "commandeered the legislative processes of Texas." In making his argument, however, appellant relies on U.S. Supreme Court decisions invalidating *federal* legislation that improperly encroaches upon state sovereignty. In the instant case, we are dealing with *state* statutory amendments allegedly enacted as a result of federal legislation. As a result, appellant fails to provide relevant authority in support of his fourth issue; therefore, this issue is waived. *See* Tex.R.App. P. 38.1(h) (providing that a brief must contain appropriate citations to authorities); *Tong v. State,* 25 S.W.3d 707, 710 (Tex.Crim.App.2000). Accordingly, we overrule appellant's fourth issue and affirm the judgment of the trial court.