Opinion issued November 1, 2007











In The
Court of Appeals
For The
First District of Texas




NO. 01-06-01076-CR




THE STATE OF TEXAS, Appellant

V.

EUSEBIO COLLAZO Jr., Appellee




On Appeal from County Criminal Court at Law No. 11
Harris County, Texas
Trial Court Cause No. 1396102




O P I N I O N
          The State of Texas challenges an order issued by County Criminal Court at
Law No. 11, granting appellee, Eusebio Collazo Jr., relief on his application for writ
of habeas corpus. We address five issues: (1) whether the county court at law lacked
jurisdiction to grant the application for writ of habeas corpus absent a showing of
confinement; (2) whether the county court at law erred in granting the application for
writ of habeas corpus without a showing that appellee’s original guilty plea was
involuntary; (3) whether the county court at law erred in granting the application for
writ of habeas corpus because appellee did not suffer consequences from an ex post
facto law; (4) whether the county court at law erred in granting habeas corpus relief
because the remedy for an impermissible ex post facto law does not require or
authorize the court to vacate appellee’s lawfully obtained conviction; and (5) whether
the county court at law’s actions in granting habeas corpus relief amounted to an
impermissible exercise of the clemency powers assigned exclusively to the executive
branch of state government. See Tex. Code Crim. Proc. Ann. art. 11.09 (Vernon
2005). We vacate the county court’s order granting appellee the relief sought, and
order the application dismissed. See Tex. R. App. P. 43.2(e).Background
          In 1998, appellee pleaded guilty to the Class A misdemeanor offense of
burglary of a motor vehicle. The court assessed punishment at confinement for one
year, suspended, and ordered appellee to be placed on community supervision for two
years and to pay a $500 fine. Appellee’s community supervision was modified twice
before he was ultimately successfully discharged on June 3, 2000. The court
exercised its discretion to allow appellee to withdraw his plea and dismissed the
complaint and information. See Tex. Code Crim. Proc. Ann. art. 42.12, § 20
(Vernon 2006). 
          Appellee was honorably discharged from the Marine Corps in 2005 and, upon
his return to Harris County, enrolled in the University of Houston Downtown
Criminal Justice Training Center. Prior to his graduation, the Texas Commission on
Law Enforcement Officer Standards and Education (“TCLEOSE”) ordered appellee’s
expulsion from the program because, by having a prior conviction for burglary of a
motor vehicle, he failed to meet the minimum standards for admission into the
program and for obtaining a Texas peace officer license.
          Appellee sought relief by filing an application for writ of habeas corpus in the
court in which he had originally pleaded guilty and been convicted of the Class A
offense that stood as a barrier between him and the peace officer license he sought. 
Appellee alleged that he is “suffering unlawful, illegal restraint” from “an
unforeseeable legal disability and consequence” of his guilty plea. Appellee alleged
that he did not understand the consequences of his plea and it was thereby rendered
involuntary. 
          Appellee’s writ application prayed for the “discharge and the ab initio dismissal
of his original Class A misdemeanor criminal case to which he entered a plea of
guilty without fully understanding the consequences of his plea.” The trial court
granted the relief requested, ordered the judgment vacated, and ordered “applicant
discharged and released without delay.” The State appealed this order.
Background
          TCLEOSE sets the minimum standards for enrollment, examination, and
licensure relevant to becoming a Texas peace officer. 37 Tex. Admin. Code §§
211.1, 215.15, and 217.1 (2007). In order for an individual to enroll in a police
academy, the academy must have on file documentation that the applicant “has never
been on court-ordered community supervision or probation for any criminal offense
above the grade of a Class B misdemeanor” and “has never been convicted of an
offense above the grade of a Class B misdemeanor.” Id. § 215.15. An applicant for
licensure must meet the same requirements. Id. § 217.1. The Texas Administrative
Code defines “conviction” in such a way as to disqualify anyone who “has been
adjudged guilty of or has had a judgment of guilt entered in a criminal case that has
not been set aside on appeal, regardless of whether . . . the charging instrument is
dismissed and the person is released from all penalties and disabilities resulting from
the offense. . . .” Id. § 211.1(19). 
          At the time of appellee’s plea, TCLEOSE rules did not create an automatic and
unwavering bar for those previously convicted of a Class A misdemeanor who sought
Texas peace officer status. Rather, a person in appellee’s position could have become
a peace officer under a more discretionary standard.



Relevant Law
          A defendant convicted of a misdemeanor offense may attack the validity of the
conviction by way of habeas corpus if he is either (1) confined or restrained as a
result of a misdemeanor charge or conviction, or (2) is no longer confined, but is
subject to collateral legal consequences resulting from the conviction. See Tex.
Const. art. V, § 8; Tex. Code Crim. Proc. Ann. art. 11.09, 11.21, 11.22 (Vernon
2005). An applicant for a writ of habeas corpus bears the burden of proving his
allegations by a preponderance of the evidence. Ex Parte Thomas, 906 S.W.2d 22,
24 (Tex. Crim. App. 1995).  
          Our review of a trial court’s habeas corpus ruling should be based upon the
court’s application of the law to the facts. Ex parte Cherry, 232 S.W.3d 305, 307
(Tex. App.—Beaumont 2007, pet. ref’d). In reviewing the trial court’s ruling, we
view the facts in the light most favorable to the ruling, and we afford almost total
deference to the trial court’s determination of historical facts that are supported by the
record, especially when the fact findings are based on an evaluation of credibility. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We afford the same
amount of deference to the trial court’s rulings on “application of law to fact
questions” that involve an evaluation of credibility. Id. If resolution of those
ultimate questions turns on an application of legal standards, we review those
determinations de novo. Id.
Jurisdiction
          In its first issue, the State argues that an applicant must be actually confined
before a court may consider an application for writ of habeas corpus. The State
acknowledges that case law from this Court is contrary to this argument, but
nevertheless urges us to reconsider the issue.


 
          To be entitled to habeas corpus relief, an applicant must establish that he was
either “confined” or “restrained” unlawfully at the time that the application was filed. 
See Dahesh v. State, 51 S.W.3d 300, 302 (Tex. App.—Houston [14th Dist.] 2000, pet.
ref’d) (citing Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist., 769
S.W.2d 554, 558 (Tex. Crim. App. 1989)). The terms “confinement” and “restraint”
encompass incarceration, release on bail or bond, release on community supervision
or parole, or any other restraint on personal liberty. Ex parte Davis, 748 S.W.2d 555,
557 (Tex. App.—Houston [1st Dist.] 1988, pet. ref’d).
          The Court of Criminal Appeals has held, “[I]f a misdemeanor judgment is void,
and its existence may have detrimental collateral consequences in some future
proceeding, it may be collaterally attacked, whether or not a term of probation was
successfully served out.”


 Tatum v. State, 846 S.W.2d 324, 327 (Tex. Crim. App.
1993). Thus, the fact that appellee is not physically confined does not preclude his
application or deprive the trial court of jurisdiction to consider it.
          In Ex parte Davis, this Court held that an applicant denied entry into the
military as a result of his prior misdemeanor conviction was sufficiently confined to
authorize his application for writ of habeas corpus. Ex parte Davis, 748 S.W.2d at
557. Appellee is likewise “confined” because he is denied the opportunity to obtain
a Texas peace officer license. We hold that the trial court had jurisdiction to consider
appellee’s application for writ of habeas corpus.


 We overrule the State’s first issue.
Involuntary Plea
          In its second issue, the State complains that the trial court erred in granting
appellee’s application because he failed to show that his guilty plea was involuntary. 
          A guilty plea constitutes a waiver of three constitutional rights: the right to a
jury trial, the right to confront one’s accusers, and the right not to incriminate oneself.
Kniatt v. State 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing Boykin v.
Alabama, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969)). Accordingly, a guilty
plea, to be consistent with due process of law, must be entered knowingly,
intelligently, and voluntarily. Id. To be “voluntary,” a guilty plea must be the
expression of the defendant’s own free will and must not be induced by threats,
misrepresentations, or improper promises. Id. (citing Brady v. United States, 397
U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970)). A defendant’s sworn representation that
his guilty plea is voluntary “constitute[s] a formidable barrier in any subsequent
collateral proceedings.” Id. (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct.
1621, 1629 (1977)).
          If a plea is not entered knowingly and voluntarily, it has been obtained in
violation of due process and is void. Houston v. State, 201 S.W.3d 212, 221 (Tex.
App.—Houston [14th Dist.] 2006, no pet.) (citing McCarthy v. United States, 394
U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969)). The voluntariness of a plea is
determined by considering “all of the relevant circumstances surrounding it” and must
be affirmatively shown in the record. Id. (citing Brady, 397 U.S. at 749, 90 S. Ct. at
1469; Boykin, 395 U.S. at 242, 89 S. Ct. at 1712). A plea is not involuntary simply
because the defendant “did not correctly assess every relevant factor entering into his
decision.” Talbott v. State, 93 S.W.3d 521, 526 (Tex. App.—Houston [14th Dist.]
2002, no pet.) (citing State v. Vasquez, 889 S.W.2d 588, 590 (Tex. App.—Houston
[14th Dist.] 1994, no pet.)).
          The general rule is that a guilty plea is voluntary if the defendant was made
fully aware of the direct consequences of his plea. State v. Jimenez, 987 S.W.2d 886,
888 (Tex. Crim. App. 1999). A guilty plea is not rendered involuntary by a lack of
knowledge as to a collateral consequence of the plea. Id. at 888–89. “There are
numerous relevant consequences of pleading guilty . . . which are not included in the
admonishments: employment difficulties and restraints, ineligibility to vote,
ineligibility for jury service, restriction on travel and others.” Vasquez, 889 S.W.2d
at 590.
          “A trial court is not required to admonish a defendant about every possible
consequence of his plea, direct or collateral, only about those direct consequences
that are punitive in nature or specifically enunciated in the law.” Mitschke v. State,
129 S.W.3d 130, 136 (Tex. Crim. App. 2004). “If the consequence is definite and
largely or completely automatic, then it is a direct consequence.” Id. at 135. 
Appellee’s employment difficulties are not a direct consequence of his plea. See
Vasquez, 889 S.W.2d at 590. Furthermore, “even if the consequence is direct, . . .
imposition of it without admonishment might still be justified as remedial and civil
rather than punitive.” Mitschke, 129 S.W.3d at 135. Thus, even if appellee could
show that his inability to obtain a peace officer license is a direct consequence of his
plea, he would still have to establish that the consequence is punitive. 
          The failure to admonish a defendant as to the non-punitive consequence of
mandatory sex offender registration does not violate the due process clause or render
his plea involuntary. Anderson v. State, 182 S.W.3d 914, 918 (Tex. Crim. App. 2006)
(quoting Mitschke, 129 S.W.3d at 136). Nor does the failure to admonish a defendant
that her parental rights could be terminated as a result of her guilty plea render the
plea involuntary.


 Talbott, 93 S.W.3d at 526. Similarly, one’s exclusion from
obtaining a peace officer license is a non-punitive measure, and failure to admonish
appellee that he would not be able to obtain a peace officer license did not violate due
process or render his plea involuntary. See Mitschke, 129 S.W.3d at 135–36. We
hold that appellee failed to show that his guilty plea was involuntary and sustain the
State’s second issue.
Ex Post Facto Rule-Making
          In its third and fourth issues, the State urges that the trial court erred in granting
habeas corpus relief because the change in TCLEOSE education and licensing
standards did not constitute impermissible ex post facto rule-making and, even if it
did, the remedy would not authorize the court to vacate appellee’s conviction.
A. Do the TCLEOSE rules violate the prohibition against ex post facto laws?
          The United States Constitution provides categorically that no ex post facto law
shall be passed. U.S. Const. art. I, § 9, cl. 3. So does the Texas Constitution. Tex.
Const. art. I, § 16. An ex post facto law is one that (1) punishes as a crime conduct
previously committed, which was innocent when done; (2) makes more burdensome
the punishment of a crime after its commission; (3) deprives one charged with a crime
of any defense available at the time when the act was committed; or (4) alters the
legal rules of evidence, and receives less or different testimony than the law required
at the time of the commission of the offense, in order to convict the offender. 
Carmell v. Texas, 529 U.S. 513, 522, 120 S. Ct. 1620, 1627 (2000); Collins v.
Youngblood, 497 U.S. 37, 42, 110 S. Ct. 2715, 2719 (1990); Ex Parte Davis, 947
S.W.2d 216, 219–20 (Tex. Crim. App. 1996); Dean v. State, 60 S.W.3d 217, 219–20
(Tex. App.—Houston [14th Dist.] 2001, pet. ref’d). Legislatures cannot retroactively
alter the definition of crimes or increase the punishment for criminal acts. Collins,
497 U.S. at 38, 110 S. Ct. at 2717.
          A statute violates ex post facto prohibitions if the following two questions are
answered affirmatively: (1) Does it apply retrospectively to appellant? and (2) Does
it constitute punishment? See Dean, 60 S.W.3d at 220. Undisputedly, the TCLEOSE
standards apply retroactively. The determinative issue is whether they are punitive
in nature or merely regulatory. Id. 
          In Trop v. Dulles, Trop challenged the constitutionality of the Nationality Act
of 1940, which provided that persons, like Trop, who had been convicted of wartime
desertion and had been dishonorably discharged, lost their citizenship. Trop v.
Dulles, 356 U.S. 86, 88, 78 S. Ct. 590, 591 (1958). In deciding whether the loss-of-citizenship provision of the Act was punishment, the Supreme Court looked to the
purpose of the statute. Id., 356 U.S. at 96, 78 S. Ct. at 595. If a statute imposes a
disability to reprimand the wrongdoer or deter others, the statute is considered penal. 
Id. But, if it imposes a disability, not to punish, but to accomplish some other
legitimate governmental purpose, it is regulatory. Id.
          To determine whether a statute is punitive or regulatory, courts follow a two-part analysis. Dean, 60 S.W.3d at 221. First, the court determines the intent of the
governing body in passing the law, i.e., did it intend for the law to be punitive, or was
its goal merely to provide a regulatory framework? Id. The United States Supreme
Court has stated:
[T]he mark of an ex post facto law is the imposition of what can fairly be
designated punishment for past acts. The question in each case where
unpleasant consequences are brought to bear upon an individual for prior
conduct, is whether the legislative aim was to punish that individual for past
activity, or whether the restriction of the individual comes about as a relevant
incident to a regulation of a present situation. . . .

De Veau v. Braisted, 363 U.S. 144, 160, 80 S. Ct. 1146, 1155 (1960). Next, the court
determines whether, despite a stated non-punitive intent, the effect of the law is “so
punitive as to negate the intention.” Dean, 60 S.W.3d at 221. In performing the
second step, the court looks at the seven factors enumerated in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S. Ct. 554 (1963). See Hudson v. U.S., 522 U.S. 93,
99–100, 118 S. Ct. 488, 493 (1997).
          1. Intent
          Whenever we are confronted with an attack upon the constitutionality of a
statute, we presume that the statute is valid and that the Legislature has not acted
unreasonably or arbitrarily. Rodriguez v. State 93 S.W.3d 60, 69 (Tex. Crim. App.
2002) (citing Ex parte Granviel, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978)). The
burden rests upon the individual who challenges the statute to establish its
unconstitutionality. Id. In the absence of contrary evidence, we will presume that the
Legislature acted in a constitutionally sound fashion. In this case, appellee cites no
evidence of a punitive intent on the part of TCLEOSE. Thus, we presume that the
intent was civil and remedial, and not criminal or punitive. Id. (reasoning that
although court was not aided by express statement of legislative intent, State was
“aided by the principle that statutes are presumed to be constitutional and a challenger
has the burden to negate every reasonable basis upon which the statute may be
sustained”).           
          Moreover, we observe that TCLEOSE was established in 1965 by the 59th
Texas Legislature pursuant to Senate Bill 236 to ensure that the citizens of Texas
would be served by officers who had the abilities, training, and ethics that law
enforcement demands. See http://www.tcleose.state.tx.us/about_tcleose.htm.


 The
stated mission of the commission is “to ensure a Texas where people are served by
highly trained and ethical law enforcement and corrections personnel through
screening, developing, and monitoring resources and setting standards.” Id. Thus,
the intent of TCLEOSE in enacting the complained-of regulations is not punitive. 
          2. Effect
          To evaluate whether the effect of a statute is criminally punitive, courts
generally look to the factors set forth by the Supreme Court in Kennedy, 372 U.S. at
169, 83 S. Ct. at 568. These include (1) whether the sanction involves an affirmative
disability or restraint; (2) whether the sanction has traditionally been regarded as a
punishment; (3) whether the sanction comes into play only on a finding of scienter;
(4) whether the sanction’s operation will promote the traditional aims of
punishment–retribution and deterrence; (5) whether the behavior to which the
sanction applies is already a crime; (6) whether an alternative purpose to which the
sanction may rationally be connected is assignable to it; and (7) whether the sanction
appears excessive in relation to the alternative purpose assigned. Rodriguez, 93
S.W.3d at 68 (citing Kennedy, 372 U.S. at 168–69, 83 S. Ct. at 567).
 
                    a. Affirmative disability or restraint
          The United States Supreme Court has held that occupational disbarment
“do[es] not involve an ‘affirmative disability or restraint,’ as that term is normally
understood . . . [as] this is certainly nothing approaching the infamous punishment of
imprisonment.” Hudson, 522 U.S. at 104, 118 S. Ct. at 496. Thus, this factor weighs
against finding the statute punitive.
                    b. Historical treatment
          Minimum standards for Texas peace officer licensing became mandatory in
1970. See http://www.tcleose.state.tx.us/about_tcleose.htm. TCLEOSE has
maintained as one of its stated goals “to develop and implement programs designed
to contribute to the reduction of per capita incidence of officer misconduct” since it
was created in 1965. Id. Because these standards have historically been regulatory,
this factor likewise weighs against a punitive finding.
                    c. Finding of scienter
          Neither the TCLEOSE academy enrollment standards nor the TCLEOSE
minimum standards for licensing requires a culpable mental state. See 37 Tex.
Admin. Code §§ 215.15, 217.1. Thus, this factor weighs against finding the statute
punitive. 
 
                    d. Traditional aims of punishment 
          Any retributive and deterrent effects are incidental, and not primary, to the
TCLEOSE academy admission and peace officer licensing minimum standards’
operation. Admission standards are designed to produce peace officers in whom
Texans can have the utmost confidence, as opposed to further punishing those who
have been previously convicted of a crime or deterring potential peace officers from
criminal behavior. This factor weighs against finding the statute punitive.
                    e. Application to criminal behavior
          A statute that applies to behavior that is already a crime is more likely to be
characterized as a criminal sanction. See Kennedy, 372 U.S. at 168, 83 S. Ct. at 567. 
Although sections 215.15 and 217.1 apply to those with a criminal record, the
TCLEOSE standards as a whole do not focus on criminal behavior. Rather, their
intent is to ensure “a Texas where people are served by highly trained and ethical law
enforcement and corrections personnel through screening, developing, and
monitoring resources and setting standards” to effectuate that intent. 
http://www.tcleose.state.tx.us/about_tcleose.htm. Thus, this factor weighs both for
and against finding the statute punitive.  
 
 
                    f. Alternative Purpose
          Both sections 215.15 and 217.1 serve a legitimate purpose apart from
punishment, that is, ensuring ethical law enforcement personnel serve our State. Id. 
This factor weighs against finding the statute punitive.
                    g. Excessiveness
          A legitimate governmental purpose exists for the TCLEOSE peace officer
eligibility standards. Although, like with sex offender registration, there may be some
punitive characteristics inherent in the provisions, they are essentially regulatory and
not overly excessive to achieve the stated purpose. This final factor weighs against
finding the statute punitive.
                    h. Conclusion
          The TCLEOSE standards for the education and licensing of Texas peace
officers are not punitive and, accordingly, do not violate the prohibition against ex
post facto laws. See Dean, 60 S.W.3d at 225; Rodriguez, 45 S.W.3d at 688. We
sustain the State’s third issue. 
B. Is vacating a lawfully obtained conviction the proper remedy?
          In its fourth issue, the State urges that, even if the TCLEOSE rules constitute
impermissible ex post facto rule-making, the remedy does not authorize the court to
vacate appellee’s lawfully obtained conviction. In Scott v. State, in which the Court
of Criminal Appeals held that a prior conviction should not have been used to
enhance Scott’s punishment, the court determined that Scott’s punishment in a
subsequent prosecution should not have been enhanced by the prior offense. Scott
v. State, 55 S.W.3d 593, 597 (Tex. Crim. App. 2001). The validity of the prior
offense was never in question. Id. Similarly, the validity of appellee’s prior
conviction is not affected by the TCLEOSE rules.


 As for the validity of the
TCLEOSE rules in some other context, that question is not before us and we do not
address it. Tex. R. App. P. 47.1. We sustain the State’s third and fourth issues. 
Impermissible Exercise of Clemency Powers
          In its last issue, the State suggests that there is no legal reason to set aside
appellee’s conviction and that the court’s actions “amounted to an impermissible
exercise of the clemency powers assigned exclusively to the executive branch of
government.” Finding no legal basis on which the trial court could have granted
appellee’s application for writ of habeas corpus, we agree. Appellant may have a
compelling complaint that TCLEOSE “appears to function within an insular world,
despite obvious constitutional and statutory safeguards, and below the legal radar of
judicial scrutiny.” After all, the plain language of Texas Code of Criminal Procedure
article 42.12(20)(a) expressly limits the collateral consequences of appellee’s plea. 
See Cuellar v. State, 70 S.W.3d 815, 819 (Tex. Crim. App. 2002). But in Cuellar v.
State, the Court of Criminal Appeals considered the validity of a subsequent penal
statute carrying criminal penalties. Id. at 821 (Keller, P.J., concurring), 822–23
(Cochran, J., concurring). Here, we evaluate a civil statute extending a privilege to
eligible citizens. See Tex. Dep’t of Pub. Safety v. Tune, 977 S.W.2d 650, 653 (Tex.
App.—Fort Worth 1998), aff’d, 23 S.W.3d 358, 364 (Tex. 2000). Habeas relief from
a valid conviction is simply not the remedy for appellee’s predicament. Therefore,
we vacate the order granting habeas relief and order the application for writ of habeas
corpus dismissed.


 
Tim Taft
                                                                        Justice
 
Panel consists of Justices Taft, Hanks, and Higley.

Publish. See Tex. R. App. P. 47.2(b).