The **STATE** of Texas, Appellant,

v.

Eusebio **COLLAZO** Jr., Appellee.

No. 01–06–01076–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 1, 2007.

Rehearing Overruled Jan. 8, 2008.

Discretionary Review Refused Aug. 20, 2008.

Charles A. Rosenthal, Jr., District Attorney–Harris County, William J. Delmore III, Assistant District Attorney, Houston, TX, for Appellant.

Glenn Gotschall, Houston, TX, for Appellee.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

TIM TAFT, Justice.

The State of Texas challenges an order issued by County Criminal Court at Law No. 11, granting appellee, Eusebio Collazo Jr., relief on his application for writ of habeas corpus. We address five issues: (1) whether the county court at law lacked jurisdiction to grant the application for writ of habeas corpus absent a showing of confinement; (2) whether the county court at law erred in granting the application for writ of habeas corpus without a showing that appellee's original guilty plea was involuntary; (3) whether the county court at law erred in granting the application for writ of habeas corpus because appellee did not suffer consequences from an *ex post facto* law; (4) whether the county court at law erred in granting habeas corpus relief because the remedy for an impermissible *ex post facto* law does not require or authorize the court to vacate appellee's lawfully obtained conviction; and (5) whether the county court at law's actions in granting habeas corpus relief amounted to an impermissible exercise of the clemency powers assigned exclusively to the executive branch of state government. *See* TEX. CODE CRIM. PROC. ANN. art. 11.09 (Vernon 2005). We vacate the county court's order granting appellee the relief sought, and order the application dismissed. *See* TEX. R.APP. P. 43.2(e).

## Background

In 1998, appellee pleaded guilty to the Class A misdemeanor offense of burglary of a motor vehicle. The court assessed punishment at confinement for one year, suspended, and ordered appellee to be placed on community supervision for two years and to pay a $500 fine. Appellee's community supervision was modified twice before he was ultimately successfully discharged on June 3, 2000. The court exercised its discretion to allow appellee to withdraw his plea and dismissed the complaint and information. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 20 (Vernon 2006).

Appellee was honorably discharged from the Marine Corps in 2005 and, upon his return to Harris County, enrolled in the

University of Houston Downtown Criminal Justice Training Center. Prior to his graduation, the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE") ordered appellee's expulsion from the program because, by having a prior conviction for burglary of a motor vehicle, he failed to meet the minimum standards for admission into the program and for obtaining a Texas peace officer license.

Appellee sought relief by filing an application for writ of habeas corpus in the court in which he had originally pleaded guilty and been convicted of the Class A offense that stood as a barrier between him and the peace officer license he sought. Appellee alleged that he is "suffering unlawful, illegal restraint" from "an unforeseeable legal disability and consequence" of his guilty plea. Appellee alleged that he did not understand the consequences of his plea and it was thereby rendered involuntary.

Appellee's writ application prayed for the "discharge and the ab initio dismissal of his original Class A misdemeanor criminal case to which he entered a plea of guilty without fully understanding the consequences of his plea." The trial court granted the relief requested, ordered the judgment vacated, and ordered "applicant discharged and released without delay." The State appealed this order.

## Background

TCLEOSE sets the minimum standards for enrollment, examination, and licensure relevant to becoming a Texas peace officer.

37 Tex. Admin. Code §§ 211.1, 215.15, and 217.1 (2007). In order for an individual to enroll in a police academy, the academy must have on file documentation that the applicant "has never been on court-ordered community supervision or probation for any criminal offense above the grade of a Class B misdemeanor" and "has never been convicted of an offense above the grade of a Class B misdemeanor." *Id.* § 215.15. An applicant for licensure must meet the same requirements. *Id.* § 217.1. The Texas Administrative Code defines "conviction" in such a way as to disqualify anyone who "has been adjudged guilty of or has had a judgment of guilt entered in a criminal case that has not been set aside on appeal, regardless of whether ... the charging instrument is dismissed and the person is released from all penalties and disabilities resulting from the offense...." *Id.* § 211.1(19).

At the time of appellee's plea, TCLEOSE rules did not create an automatic and unwavering bar for those previously convicted of a Class A misdemeanor who sought Texas peace officer status. Rather, a person in appellee's position could have become a peace officer under a more discretionary standard.[1]

## Relevant Law

■ A defendant convicted of a misdemeanor offense may attack the validity of the conviction by way of habeas corpus if he is either (1) confined or restrained as a result of a misdemeanor charge or conviction, or (2) is no longer confined, but is

---

1. At the time that appellee entered his guilty plea, TCLEOSE precluded from obtaining a license an individual who (1) had been convicted of an offense above the grade of a Class C misdemeanor during the previous five years; (2) had been convicted or placed under community supervision at any time for any offense which "directly relates to the duties and responsibilities of any office requiring such license"; or (3) lacked good moral character. Tex. Gov't Code §§ 415.031, 415.056, *repealed by* Act of May 28, 1999, 76th Leg., R.S., ch. 388, § 6(b)(1), 1999 Tex. Gen. Laws 1431, 2440 (replaced by Chapter 1701 of the Occupations Code.).

subject to collateral legal consequences resulting from the conviction. *See* TEX. CONST. art. V, § 8; TEX.CODE CRIM. PROC. ANN. art. 11.09, 11.21, 11.22 (Vernon 2005). An applicant for a writ of habeas corpus bears the burden of proving his allegations by a preponderance of the evidence. *Ex Parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim.App.1995).

Our review of a trial court's habeas corpus ruling should be based upon the court's application of the law to the facts. *Ex parte Cherry*, 232 S.W.3d 305, 307 (Tex.App.-Beaumont 2007, pet. ref'd). In reviewing the trial court's ruling, we view the facts in the light most favorable to the ruling, and we afford almost total deference to the trial court's determination of historical facts that are supported by the record, especially when the fact findings are based on an evaluation of credibility. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We afford the same amount of deference to the trial court's rulings on "application of law to fact questions" that involve an evaluation of credibility. *Id.* If resolution of those ultimate questions turns on an application of legal standards, we review those determinations *de novo. Id.*

## Jurisdiction

In its first issue, the State argues that an applicant must be actually confined before a court may consider an application for writ of habeas corpus. The State acknowledges that case law from this Court

is contrary to this argument, but nevertheless urges us to reconsider the issue.[2]

To be entitled to habeas corpus relief, an applicant must establish that he was either "confined" or "restrained" unlawfully at the time that the application was filed. *See Dahesh v. State*, 51 S.W.3d 300, 302 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (citing *Rodriguez v. Court of Appeals, Eighth Supreme Judicial Dist.*, 769 S.W.2d 554, 558 (Tex.Crim.App. 1989)). The terms "confinement" and "restraint" encompass incarceration, release on bail or bond, release on community supervision or parole, or any other restraint on personal liberty. *Ex parte Davis*, 748 S.W.2d 555, 557 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd).

The Court of Criminal Appeals has held, "[I]f a misdemeanor judgment is void, and its existence may have detrimental collateral consequences in some future proceeding, it may be collaterally attacked, whether or not a term of probation was successfully served out."[3] *Tatum v. State*, 846 S.W.2d 324, 327 (Tex.Crim.App.1993). Thus, the fact that appellee is not physically confined does not preclude his application or deprive the trial court of jurisdiction to consider it.

In *Ex parte Davis*, this Court held that an applicant denied entry into the military as a result of his prior misdemeanor conviction was sufficiently confined to authorize his application for writ of habeas corpus. *Ex parte Davis*, 748 S.W.2d at 557. Appellee is likewise "confined" because he is denied the opportuni-

---

**2.** The State asked to withdraw this argument during oral argument. However, this Court is obligated to review issues affecting jurisdiction. *See White v. State*, 930 S.W.2d 673, 675 (Tex.App.-Waco 1996, no pet.); *State v. Morse*, 903 S.W.2d 100, 102 (Tex.App.-El Paso 1995, no pet.).

**3.** "Confinement" may be established in either an article 11.07 or an article 11.09 writ application by showing collateral consequences resulting from the conviction. *Compare Tatum v. State*, 846 S.W.2d 324, 327 (Tex.Crim.App. 1993) *with* TEX.CODE CRIM. PROC. ANN. art. 11.07 § 3(c) (Vernon 2005); see also TEX.CODE CRIM. PROC. ANN. art. 11.09 (Vernon 2005).

ty to obtain a Texas peace officer license. We hold that the trial court had jurisdiction to consider appellee's application for writ of habeas corpus.[4] We overrule the State's first issue.

## Involuntary Plea

In its second issue, the State complains that the trial court erred in granting appellee's application because he failed to show that his guilty plea was involuntary.

 A guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the right not to incriminate oneself. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex.Crim.App.2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969)). Accordingly, a guilty plea, to be consistent with due process of law, must be entered knowingly, intelligently, and voluntarily. *Id.* To be "voluntary," a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. *Id.* (citing *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)). A defendant's sworn representation that his guilty plea is voluntary "constitute[s] a formidable barrier in any subsequent collateral proceedings." *Id.* (citing *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)).

 If a plea is not entered knowingly and voluntarily, it has been obtained in violation of due process and is void. *Houston v. State*, 201 S.W.3d 212, 221 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969)). The voluntariness of a plea is determined by considering "all of the relevant circumstances surrounding it" and must be affirmatively shown in the record. *Id.* (citing *Brady*, 397 U.S. at 749, 90 S.Ct. at 1469; *Boykin*, 395 U.S. at 242, 89 S.Ct. at 1712). A plea is not involuntary simply because the defendant "did not correctly assess every relevant factor entering into his decision." *Talbott v. State*, 93 S.W.3d 521, 526 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing *State v. Vasquez*, 889 S.W.2d 588, 590 (Tex.App.-Houston [14th Dist.] 1994, no pet.)).

 The general rule is that a guilty plea is voluntary if the defendant was made fully aware of the direct consequences of his plea. *State v. Jimenez*, 987 S.W.2d 886, 888 (Tex.Crim.App.1999). A guilty plea is not rendered involuntary by a lack of knowledge as to a collateral consequence of the plea. *Id.* at 888–89. "There are numerous relevant consequences of pleading guilty ... which are not included in the admonishments: employment difficulties and restraints, ineligibility to vote, ineligibility for jury service, restriction on travel and others." *Vasquez*, 889 S.W.2d at 590.

 "A trial court is not required to admonish a defendant about every possible consequence of his plea, direct or collateral, only about those direct consequences that are punitive in nature or specifically enunciated in the law." *Mitschke v. State*, 129 S.W.3d 130, 136

---

4. As an intermediate appellate court, we are bound to follow the law enacted by the legislature and decisions rendered by the Court of Criminal Appeals. The state of the law regarding the requirement of confinement before seeking a writ of habeas corpus has wandered far from its original intent, when it was "well established that writ of habeas corpus will lie only to enlarge one from an illegal restraint on his liberties, and is not available as a writ of error to review or correct erroneous proceedings or as an appeal from erroneous judgments." *Ex parte Beamer*, 116 Tex. 39, 43, 285 S.W. 255, 256 (Tex.1926).

(Tex.Crim.App.2004). "If the consequence is definite and largely or completely automatic, then it is a direct consequence." *Id.* at 135. Appellee's employment difficulties are not a direct consequence of his plea. *See Vasquez,* 889 S.W.2d at 590. Furthermore, "even if the consequence is direct, ... imposition of it without admonishment might still be justified as remedial and civil rather than punitive." *Mitschke,* 129 S.W.3d at 135. Thus, even if appellee could show that his inability to obtain a peace officer license is a direct consequence of his plea, he would still have to establish that the consequence is punitive.

The failure to admonish a defendant as to the non-punitive consequence of mandatory sex offender registration does not violate the due process clause or render his plea involuntary. *Anderson v. State,* 182 S.W.3d 914, 918 (Tex.Crim.App. 2006) (quoting *Mitschke,* 129 S.W.3d at 136). Nor does the failure to admonish a defendant that her parental rights could be terminated as a result of her guilty plea render the plea involuntary.[5] *Talbott,* 93 S.W.3d at 526. Similarly, one's exclusion from obtaining a peace officer license is a non-punitive measure, and failure to admonish appellee that he would not be able to obtain a peace officer license did not violate due process or render his plea involuntary. *See Mitschke,* 129 S.W.3d at 135–36. We hold that appellee failed to show that his guilty plea was involuntary and sustain the State's second issue.

### Ex Post Facto Rule–Making

In its third and fourth issues, the State urges that the trial court erred in granting habeas corpus relief because the change in TCLEOSE education and licensing standards did not constitute impermissible *ex*

*post facto* rule-making and, even if it did, the remedy would not authorize the court to vacate appellee's conviction.

### A. Do the TCLEOSE rules violate the prohibition against *ex post facto* laws?

The United States Constitution provides categorically that no *ex post facto* law shall be passed. U.S. CONST. art. I, § 9, cl. 3. So does the Texas Constitution. TEX. CONST. ART. I, § 16. An *ex post facto* law is one that (1) punishes as a crime conduct previously committed, which was innocent when done; (2) *makes more burdensome the punishment of a crime after its commission*; (3) deprives one charged with a crime of any defense available at the time when the act was committed; or (4) alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offense, in order to convict the offender. *Carmell v. Texas,* 529 U.S. 513, 522, 120 S.Ct. 1620, 1627, 146 L.Ed.2d 577 (2000); *Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990); *Ex Parte Davis,* 947 S.W.2d 216, 219–20 (Tex.Crim.App.1996); *Dean v. State,* 60 S.W.3d 217, 219–20 (Tex. App.-Houston [14th Dist.] 2001, pet. ref'd). Legislatures cannot retroactively alter the definition of crimes or increase the punishment for criminal acts. *Collins,* 497 U.S. at 38, 110 S.Ct. at 2717.

A statute violates *ex post facto* prohibitions if the following two questions are answered affirmatively: (1) Does it apply retrospectively to appellant? and (2) Does it constitute punishment? *See Dean,* 60 S.W.3d at 220. Undisputedly, the TCLEOSE standards apply retroactively.

---

**5.** Loss of the right to vote for a period of time and loss of the right to possess firearms are also non-punitive, but direct, consequences of

a plea of guilty. *Mitschke v. State,* 129 S.W.3d 130, 135 (Tex.Crim.App.2004).

The determinative issue is whether they are punitive in nature or merely regulatory. *Id.*

In *Trop v. Dulles*, Trop challenged the constitutionality of the Nationality Act of 1940, which provided that persons, like Trop, who had been convicted of wartime desertion and had been dishonorably discharged, lost their citizenship. *Trop v. Dulles*, 356 U.S. 86, 88, 78 S.Ct. 590, 591, 2 L.Ed.2d 630 (1958). In deciding whether the loss-of-citizenship provision of the Act was punishment, the Supreme Court looked to the purpose of the statute. *Id.*, 356 U.S. at 96, 78 S.Ct. at 595. If a statute imposes a disability to reprimand the wrongdoer or deter others, the statute is considered penal. *Id.* But, if it imposes a disability, not to punish, but to accomplish some other legitimate governmental purpose, it is regulatory. *Id.*

▇▇▇ To determine whether a statute is punitive or regulatory, courts follow a two-part analysis. *Dean*, 60 S.W.3d at 221. First, the court determines the intent of the governing body in passing the law, *i.e.*, did it intend for the law to be punitive, or was its goal merely to provide a regulatory framework? *Id.* The United States Supreme Court has stated:

> [T]he mark of an ex post facto law is the imposition of what can fairly be designated punishment for past acts. The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation. . . .

*De Veau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960). Next, the court determines whether, despite a stated non-punitive intent, the effect of the law is "so punitive as to negate the intention." *Dean*, 60 S.W.3d at 221. In performing the second step, the court looks at the seven factors enumerated in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). *See Hudson v. U.S.*, 522 U.S. 93, 99–100, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997).

### 1. Intent

▇▇▇ Whenever we are confronted with an attack upon the constitutionality of a statute, we presume that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex.Crim.App. 2002) (citing *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex.Crim.App.1978)). The burden rests upon the individual who challenges the statute to establish its unconstitutionality. *Id.* In the absence of contrary evidence, we will presume that the Legislature acted in a constitutionally sound fashion. In this case, appellee cites no evidence of a punitive intent on the part of TCLEOSE. Thus, we presume that the intent was civil and remedial, and not criminal or punitive. *Id.* (reasoning that although court was not aided by express statement of legislative intent, State was "aided by the principle that statutes are presumed to be constitutional and a challenger has the burden to negate every reasonable basis upon which the statute may be sustained").

Moreover, we observe that TCLEOSE was established in 1965 by the 59th Texas Legislature pursuant to Senate Bill 236 to ensure that the citizens of Texas would be served by officers who had the abilities, training, and ethics that law enforcement demands. See http://www.tcleose.state.tx.us/about_tcleose.htm.[6] The stated mission

**6.** This information was accessed on November 1, 2007.

of the commission is "to ensure a Texas where people are served by highly trained and ethical law enforcement and corrections personnel through screening, developing, and monitoring resources and setting standards." *Id.* Thus, the intent of TCLEOSE in enacting the complained-of regulations is not punitive.

### 2. Effect

To evaluate whether the effect of a statute is criminally punitive, courts generally look to the factors set forth by the Supreme Court in *Kennedy*, 372 U.S. at 169, 83 S.Ct. at 568. These include (1) whether the sanction involves an affirmative disability or restraint; (2) whether the sanction has traditionally been regarded as a punishment; (3) whether the sanction comes into play only on a finding of scienter; (4) whether the sanction's operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which the sanction may rationally be connected is assignable to it; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Rodriguez*, 93 S.W.3d at 68 (citing *Kennedy*, 372 U.S. at 168–69, 83 S.Ct. at 567).

#### a. Affirmative disability or restraint

The United States Supreme Court has held that occupational disbarment "do[es] not involve an 'affirmative disability or restraint,' as that term is normally understood ... [as] this is certainly nothing approaching the infamous punishment of imprisonment." *Hudson*, 522 U.S. at 104, 118 S.Ct. at 496. Thus, this factor weighs against finding the statute punitive.

#### b. Historical treatment

Minimum standards for Texas peace officer licensing became mandatory in 1970. *See* http://www.tcleose.state.tx.us/about_

tcleose.htm. TCLEOSE has maintained as one of its stated goals "to develop and implement programs designed to contribute to the reduction of per capita incidence of officer misconduct" since it was created in 1965. *Id.* Because these standards have historically been regulatory, this factor likewise weighs against a punitive finding.

#### c. Finding of scienter

Neither the TCLEOSE academy enrollment standards nor the TCLEOSE minimum standards for licensing requires a culpable mental state. *See* 37 TEX. ADMIN. CODE §§ 215.15, 217.1. Thus, this factor weighs against finding the statute punitive.

#### d. Traditional aims of punishment

Any retributive and deterrent effects are incidental, and not primary, to the TCLEOSE academy admission and peace officer licensing minimum standards' operation. Admission standards are designed to produce peace officers in whom Texans can have the utmost confidence, as opposed to further punishing those who have been previously convicted of a crime or deterring potential peace officers from criminal behavior. This factor weighs against finding the statute punitive.

#### e. Application to criminal behavior

A statute that applies to behavior that is already a crime is more likely to be characterized as a criminal sanction. *See Kennedy*, 372 U.S. at 168, 83 S.Ct. at 567. Although sections 215.15 and 217.1 apply to those with a criminal record, the TCLEOSE standards as a whole do not focus on criminal behavior. Rather, their intent is to ensure "a Texas where people are served by highly trained and ethical law enforcement and corrections personnel through screening, developing, and monitoring resources and setting standards" to effectuate that intent. http://www.tcleose.

state.tx.us/about_tcleose.htm. Thus, this factor weighs both for and against finding the statute punitive.

### f. Alternative Purpose

Both sections 215.15 and 217.1 serve a legitimate purpose apart from punishment, that is, ensuring ethical law enforcement personnel serve our State. *Id.* This factor weighs against finding the statute punitive.

### g. Excessiveness

A legitimate governmental purpose exists for the TCLEOSE peace officer eligibility standards. Although, like with sex offender registration, there may be some punitive characteristics inherent in the provisions, they are essentially regulatory and not overly excessive to achieve the stated purpose. This final factor weighs against finding the statute punitive.

### h. Conclusion

The TCLEOSE standards for the education and licensing of Texas peace officers are not punitive and, accordingly, do not violate the prohibition against *ex post facto* laws. *See Dean,* 60 S.W.3d at 225; *Rodriguez,* 45 S.W.3d at 688. We sustain the State's third issue.

### B. Is vacating a lawfully obtained conviction the proper remedy?

In its fourth issue, the State urges that, even if the TCLEOSE rules constitute impermissible *ex post facto* rule-making, the remedy does not authorize the court to vacate appellee's lawfully obtained conviction. In *Scott v. State,* in which the Court of Criminal Appeals held that a prior conviction should not have been used to enhance Scott's punishment, the court determined that Scott's punishment in a subsequent prosecution should not have been enhanced by the prior offense. *Scott v. State,* 55 S.W.3d 593, 597 (Tex. Crim.App.2001). The validity of the prior offense was never in question. *Id.* Similarly, the validity of appellee's prior conviction is not affected by the TCLEOSE rules.[7] As for the validity of the TCLEOSE rules in some other context, that question is not before us and we do not address it. TEX.R.APP. P. 47.1. We sustain the State's third and fourth issues.

### Impermissible Exercise of Clemency Powers

■ In its last issue, the State suggests that there is no legal reason to set aside appellee's conviction and that the court's actions "amounted to an impermissible exercise of the clemency powers assigned exclusively to the executive branch of government." Finding no legal basis on which the trial court could have granted appellee's application for writ of habeas corpus, we agree. Appellant may have a compelling complaint that TCLEOSE "appears to function within an insular world, despite obvious constitutional and statutory safeguards, and below the legal radar of judicial scrutiny." After all, the plain language of Texas Code of Criminal Procedure article 42.12(20)(a) expressly limits the collateral consequences of appellee's plea. *See Cuellar v. State,* 70 S.W.3d 815, 819 (Tex.Crim.App.2002). But in *Cuellar v. State,* the Court of Criminal Appeals considered the validity of a subsequent penal statute carrying criminal penalties. *Id.* at 821 (Keller, P.J., concurring), 822–23 (Cochran, J., concurring). Here, we evaluate a civil statute extending a privilege to

---

7. As the State points out, if appellee's prior conviction is invalid because of TCLEOSE rules prohibiting anyone with a Class A misdemeanor conviction from obtaining a peace officer license, then every Class A misdemean- or conviction obtained prior to 1999 is rendered invalid simply because those convictions now prevent each of those defendants from seeking a peace officer license.

eligible citizens. *See Tex. Dep't of Pub. Safety v. Tune,* 977 S.W.2d 650, 653 (Tex. App.-Fort Worth 1998), *aff'd,* 23 S.W.3d 358, 364 (Tex.2000). Habeas relief from a valid conviction is simply not the remedy for appellee's predicament. Therefore, we vacate the order granting habeas relief and order the application for writ of habeas corpus dismissed.