**Opinion issued June 30, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00924-CR

————————————

## EX PARTE NII-OTABIL NELSON, Appellant

---

### On Appeal from the 182nd District Court
### Harris County, Texas
### Trial Court Cause No. 1372073-A

---

## MEMORANDUM OPINION

Appellant, Nii-Otabil Nelson, appeals from the denial of his application for a writ of habeas corpus, filed under article 11.072 of the Texas Code of Criminal Procedure, alleging that his trial counsel's ineffectiveness led him to plead no contest. We affirm.

## BACKGROUND

On April 15, 2014, after being charged with injury to a child, a third-degree

felony, Nelson pleaded *nolo contendere* or no contest to the reduced charge of assault—bodily injury, a class A misdemeanor. *See* TEX. PENAL CODE ANN. §§22.04(a)(3), (f), 22.01(a)(1), (b) (West Supp. 2014). The trial court placed Nelson on deferred adjudication community supervision for eighteen months that day, assessed a $200 fine, and ordered him to serve seven days in jail as a condition of probation. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5(a) (West Supp. 2014).

On May 30, 2014, through counsel, Nelson filed an application for a writ of habeas corpus challenging the legal validity of the order in which community supervision was imposed. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, §§ 1, 2(b)(1) (West Supp. 2014). Nelson alleged that his trial counsel had provided him ineffective assistance of counsel because, among other claims, his counsel did not explain with clarity the ramifications of the no-contest plea on Nelson's future as a medical professional and was wholly unprepared to try this case because counsel failed to file motions or contact witnesses. Nelson further asserted that, as a result of his trial counsel's ineffectiveness, he pleaded no contest, and was forced to agree to fourteen days in jail during off-hour service and, during his second weekend in jail, was potentially exposed to a communicable disease and nearly quarantined for thirty days which potentially endangered his future as a medical professional and the lives of his innocent patients.

After Nelson and the State agreed to a writ hearing by affidavit, the trial court held the writ hearing on August 28, 2014, where it reviewed the application, which included the affidavits of Nelson and his trial counsel, and heard the counsels' arguments before denying the writ and requesting that the State submit proposed findings of fact and conclusions of law. Although the clerk's record included the trial court's findings and order denying Nelson's habeas application, signed on September 22, 2014, the clerk's record did not contain the trial court's certification of Nelson's right to appeal the denial of his application, or any affidavits or other documents that the trial court stated in its findings it had considered. Thus, this Court abated this case for the trial court to hold a hearing to execute the certification and file a supplemental clerk's record.

At the January 8, 2015 abatement hearing, the trial court noted that, in denying Nelson's habeas application, it had considered the affidavits of Nelson and his trial counsel, Anthony T. Simmons, as well as a motion for discovery by Simmons, but that these documents had been left out of the clerk's record. The trial court ordered the trial clerk to file those missing documents, along with the certification of Nelson's right to appeal the denial of his habeas application, in a supplemental clerk's record, that was filed in this Court.[1]

---

[1] The trial court further noted that it would adopt the same findings it had signed on September 22, 2014, in denying Nelson's habeas application, and made those active as of the January 8, 2015 abatement hearing date.

## A. Nelson's Affidavit

In support of his habeas application, Nelson submitted a signed, but unsworn and undated, affidavit alleging that he had hired Simmons, after having had an attorney appointed for him, because he believed that Simmons was competent to handle his case, but now realized that Simmons was not. Nelson claims that Simmons had agreed to do several things, such as subpoena Nelson's son's school and group home records to show his mental and physical condition, because his son is a special needs individual, hire an expert to review the State's photos, and subpoena character witnesses. However, Nelson claims that it was not until the week before his trial date that Simmons' assistant returned Nelson's call to tell him that Simmons had done the things that Nelson had requested, the evidence was in Nelson's favor, and Simmons would meet Nelson in court on April 14, 2014.

Moreover, Nelson alleges in his affidavit that Simmons first spoke with the prosecutor in court on the morning of April 14, 2014, before informing Nelson that they would need to return the next day, but that he was too busy to go over his case with Nelson at that time. The next day, April 15, 2014, Nelson claims that Simmons again spoke directly with the prosecutor first before telling Nelson to accept and sign the documents from the court, which Simmons told him were a formality because Nelson would have thirty days to come back and go over all the subpoenaed records that he had. Later that evening of April 15, 2014, Nelson

4

asserts that he called Simmons to look over all the information Simmons said he had received, and Simmons asked Nelson to meet him on April 16, 2014, when he then apologized for the inconvenience and withdrew from the case. Thus, Nelson claims that Simmons was ineffective *per se* because he was not prepared to try Nelson's case, refused to act on any of his requests, and had him plead no contest while assuring him that he had thirty days to correct any problems, which was not true.

## B.    Nelson's Trial Counsel's Affidavit

The State submitted Simmons' affidavit, dated August 26, 2014. Simmons stated that Nelson's injury-to-a-child case had been pending for about a year before he was hired days before trial. After Simmons obtained a continuance to prepare for the case, he fully informed Nelson of the charges against him and addressed any and all concerns. Simmons further filed a discovery motion to address all of Nelson's concerns and met with Nelson several times to review the State's discovery responses.

Furthermore, Simmons claimed that, in preparation for trial, he had developed a voir dire, cross-examination, and argument of the evidence, and that he was ready for trial when the prosecutor made an offer that he had to convey to Nelson for his consideration. The plea agreement was for Nelson to agree to the reduction to a misdemeanor, which occurred after several back-and-forth

5

negotiations of the terms between Simmons and the prosecutor. Simmons asserted that he had fully explained to Nelson the no-contest plea, all conditions of probation, and the plea bargain's effect on limiting his right of appeal, as evidenced by Nelson's signature on the plea documents. Simmons contended that, throughout all the proceedings, Nelson was competent and understood their conversations.

## C.     The Habeas Court's Writ Hearing By Affidavit[2]

On August 28, 2014, the trial court held a writ hearing by affidavit in which Nelson appeared with his counsel, Lott J. Brooks, III. The trial court noted receipt of the affidavits of Nelson and his trial counsel, Simmons, and then heard brief closing arguments by Brooks and the prosecutor, but did not hear any witnesses. Nelson's habeas counsel, Brooks, essentially argued that, after reviewing the clerk's file and Simmons' affidavit, Simmons provided ineffective assistance because he was not prepared to go to trial since Nelson had asked Simmons to do several things, such as subpoena witnesses and hire an expert, which Simmons did not do, which forced Nelson to take the plea. Nelson's habeas counsel further contended that because Simmons had told Nelson that he would have thirty days to

---

[2]     Although the court reporter initially filed an information statement in this Court indicating no record was taken at the writ hearing, the writ hearing record was not filed in this cause number until May 14, 2015, because the reporter had inadvertently filed it in a related cause number 01-15-00258-CR.

straighten out any errors, that led to Nelson's agreeing to jail time, which made Simmons ineffective *per se*.

The prosecutor responded that Simmons did not provide ineffective assistance of counsel because his affidavit laid out a comprehensive list of things that he did to prepare for trial, including moving for a continuance, and that he met with Nelson to review discovery together to prepare for trial. The prosecutor further noted, in closing, that Simmons stated that he had fully informed Nelson of the charge against him, the possible ramifications of taking the plea, and the conditions of probation.

The trial court noted that one of the criminal code provisions allows the court to rely on its own personal recollection because it took Nelson's plea and recalled the negotiations. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 6(b).[3] The court also noted that Nelson knew that he would have to do some jail time because he had asked to get his calendar to see when he could do the jail time and the parties came up with a proposed start date. After that, the trial court recalled that there were many discussions about Nelson's not understanding when he was supposed to do the jail time and confusion about health issues at the jail. The trial court recalled that it later amended the conditions of community supervision to allow Nelson's jail time to be done under house arrest, which clearly showed that

---

[3] There was no reporter's record filed for the plea and punishment hearing.

7

Nelson knew he was going to have to do some jail time as a condition of probation, and he even picked the start date. The court further recalled that there were long and tedious negotiations back and forth on the plea date, that Simmons seemed to be working very diligently on this case, and that based on Simmons' affidavit, there was no reason to find him ineffective. Thus, at the end of the writ hearing, the trial court orally denied Nelson's writ and asked the State to submit proposed findings for it to sign within the next thirty days.

**D.     The Habeas Court's Findings of Fact and Conclusions of Law**

The trial court denied Nelson's habeas application by signing findings of fact and conclusions of law and an order on September 22, 2014. It stated that it had considered Nelson's habeas application, the court's own recollection of the case, and the evidence presented at the writ hearing held on August 28, 2014.

Then the trial court entered the following findings of fact and conclusions of law in denying Nelson's habeas application:

FINDINGS OF FACT

1.     On April 15, 2014, the Defendant, Nii-Otabil Nelson, was placed on a misdemeanor Deferred Adjudication for 18 months by order of this Court in Cause #1372073 after a plea of No Contest.
2.     The Defendant hired attorney Anthony T. Simmons to represent him during plea negotiations and any subsequent trial in Cause #1372073.

8

3. The focus of Anthony T. Simmons's legal practice is criminal defense, and his practice includes representation and trial work in both injury to a child and assault cases.

4. Anthony T. Simmons adequately informed the Defendant of the charges against him and addressed any questions or concerns that the Defendant had.

5. Anthony T. Simmons adequately prepared for trial by meeting with the Defendant, filing a Motion for Discovery, evaluating the State's evidence, developing a trial strategy, and preparing for trial including a voir dire, cross-examination questions, and arguments.

6. Anthony T. Simmons informed the Defendant of the effect of a no-contest plea, all conditions of community supervision, and the effect that a plea bargain would have on his right to appeal.

7. The Defendant was competent at the time of the plea and had an understanding of the charges against him and the effects of a No Contest plea.

8. The Defendant was notified of and agreed to jail time in the Harris County Jail as a condition of his Deferred Adjudication during the plea negotiations and during his plea of No Contest.

## CONCLUSIONS OF LAW

1. The Defendant has failed to prove that the representation by attorney Anthony T. Simmons was ineffective assistance of counsel.

2. The Court's Order of Deferred Adjudication and its conditions are legally valid.

Although Nelson prematurely filed his notice of appeal on September 2, 2014, it is deemed filed on September 22, 2014, the date the trial court signed its findings and order denying his application. *See* TEX. R. APP. P. 27.1(b).

9

**DISCUSSION**

In his sole issue, Nelson contends that the trial court abused its discretion in denying his habeas application because he received ineffective assistance of counsel, which made his no-contest plea involuntary.

**A.    Standard of Review**

"An applicant seeking habeas corpus relief based on an involuntary guilty plea must prove his claim by a preponderance of the evidence." *Ex parte Mandujano*, No. 01-12-00922-CR, 2013 WL 4007801, at *3 (Tex. App.—Houston [1st Dist.] Aug. 6, 2013, no pet.) (mem. op., not designated for publication) (citing *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006)). The applicant bears the burden to establish that a reasonable probability exists that, but for counsel's advice, he would not have pleaded guilty and would have insisted on going to trial. *See Ex parte Ali*, 368 S.W.3d 827, 835 (Tex. App.—Austin 2012, pet. ref'd). Further, the applicant must show that a decision to reject the plea bargain would have been rational under the circumstances. *See id.* (citing *Padilla v. Kentucky*, 559 U.S. 356, 370, 130 S. Ct. 1473, 1485 (2010)).

When reviewing a trial court's ruling on a habeas corpus application, we view the evidence presented in the light most favorable to that ruling, and we must uphold that ruling absent an abuse of discretion. *See Ex parte Mandujano*, 2013 WL 4007801, at *3 (citing *Ex parte Ali*, 368 S.W.3d at 831). We "afford almost

10

total deference to a trial court's fact findings in habeas proceedings, especially when those findings are based upon credibility and demeanor." *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)). We similarly defer to the trial court's application of the law to the facts if that resolution turns upon credibility and demeanor determinations. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). If the resolution of the ultimate question turns on an application of law, we review the determination de novo. *See Ex parte Mandujano*, 2013 WL 4007801, at *3.

In an article 11.072 habeas case, the trial judge is the sole finder of fact. *See Ex parte Obi*, 446 S.W.3d 590, 596 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Ex parte Garcia*, 353 S.W.3d 785, 788 (Tex. Crim. App. 2011)). An appellate court reviews the evidence presented in the light most favorable to the trial court's ruling, regardless of whether the court's findings are implied or explicit, or based on affidavits or live testimony, provided they are supported by the record. *See Ex parte Murillo*, 389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Nevertheless, while we give deference to any underlying historical fact determinations made by the habeas court, we review the ultimate question of prejudice under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984),

11

de novo. *See Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005); *Ex parte Murillo,* 389 S.W.3d at 927. We will uphold the habeas court's judgment as long as it is correct under any theory of law applicable to the case. *See Ex parte Murillo*, 389 S.W.3d at 926.

## B. Applicable Law

To be valid, a plea must be entered voluntarily, knowingly, and intelligently. TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (West Supp. 2014); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008); *Ex parte Karlson*, 282 S.W.3d 118, 128–29 (Tex. App.—Fort Worth 2009, pet. ref'd). A plea is not voluntarily and knowingly entered if it is made as a result of ineffective assistance of counsel. *Ulloa v. State*, 370 S.W.3d 766, 771 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

The two-pronged *Strickland* test applies to challenges to guilty pleas, such as in this case, based on ineffective assistance of counsel. *See Ex parte Obi*, 446 S.W.3d at 596 (citing *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985)). Thus, to be entitled to relief, appellant was required to show by a preponderance of the evidence that (1) trial counsel's performance fell below the objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. *Strickland,* 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *see also Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). The "failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

In the context of pleas, the focus of the prejudice inquiry is "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370. Therefore, in order to satisfy *Strickland*'s prejudice prong, when a defendant has pleaded guilty or *nolo contendere*, he "must show that there is a reasonable probability that, but for counsel's errors, he *would not have pleaded guilty* and *would have insisted on going to trial*." *Hill*, 474 U.S. at 59, 106 S. Ct. at 370 (emphasis added); *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

13

## C.  Analysis

Nelson claims that his trial counsel was ineffective because he was unprepared to go to trial and failed to advise him of the ramifications of his no-contest plea on his employment prospects, which rendered his plea involuntary. Here, although Nelson asserts in his unsworn affidavit that his "intention when [he] hired Mr. Simmons [was] to try [his] case," Nelson did not present any evidence that, but for his counsel's allegedly-deficient performance, he would not have pleaded no contest and instead would have insisted on proceeding to trial on the original third-degree felony injury-to-a-child charge, where he faced a minimum of two years to a maximum of ten years in prison, if convicted after trial. *Cf. Thompson*, 9 S.W.3d at 813; *see also* TEX. PENAL CODE ANN. §§ 12.34(a), 22.04(a)(3), (f) (West Supp. 2014). Notably, Nelson did not allege in either his unsworn affidavit or in his habeas application that he would have proceeded to trial.

Moreover, to the extent Nelson claims that his trial counsel also was ineffective for failing to advise him of the ramifications of his no-contest plea on his employment prospects, a guilty plea is not rendered involuntary by a lack of knowledge as to a collateral consequence of the plea. *See State v. Jimenez*, 987 S.W.2d 886, 888–89 (Tex. Crim. App. 1999); *State v. Collazo*, 264 S.W.3d 121, 127 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Nelson's employment

14

difficulties are not a direct consequence of his plea. *See Collazo*, 264 S.W.3d at 128 (citation omitted). In any event, we defer to the trial court's historical factual findings. *See Johnson*, 169 S.W.3d at 239. Specifically, the trial court found that Simmons had informed Nelson of the charges against him and addressed any questions or concerns Nelson had, informed Nelson of the effect of a no-contest plea and all conditions of community supervision, and the court found that Nelson was competent at the time of the plea and understood the effects of a no-contest plea, and had agreed to jail time as a condition of his deferred adjudication.

Without evidence in the record that Nelson would have insisted on proceeding to trial, but for his trial counsel's allegedly-deficient performance, he cannot establish the second prong of the *Strickland* test, and there is no need to discuss the first prong. *See Johnson*, 169 S.W.3d at 232 ("If the defendant cannot demonstrate that but for his counsel's deficient performance, he would have [availed himself of trial], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief.") (internal quotation marks and citation omitted); *Williams*, 301 S.W.3d at 687. Thus, we hold that the trial court did not abuse its discretion in denying Nelson habeas relief and we overrule his sole issue.

## CONCLUSION

Accordingly, we affirm the trial court's order denying Nelson habeas relief.

**PER CURIAM**

Panel consists of Chief Justice Radack and Justices Higley and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).